## CASE NO. 21-10491-J
## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

DORIS LAPHAM

(Plaintiff/Appellant),

v.

WALGREEN CO.

(Defendant/Appellee).

---

On Appeal from the United States District Court
for the Middle District of Florida
Orlando Division
District Court Docket No. 6:19-cv-579-ORL-40DCI (SJB)

---

**CORRECTED OPENING BRIEF OF APPELLANT DORIS LAPHAM**

/s/ *Kelly H. Chanfrau*
Kelly H. Chanfrau, B.C.S.
Florida Bar No. 560111
CHANFRAU & CHANFRAU, P.L.
701 N. Peninsula Drive
Daytona Beach, FL 32118
P: 386-258-7313
F: 386-238-1464
E-mail: Kelly@chanfraulaw.com
Secondary: Melanie@chanfraulaw.com
Secondary: Dahiana@chanfraulaw.com
*Counsel for Plaintiff/Appellant*

June 7, 2021

*Doris Lapham v. Walgreen Co.*
*Appeal No. 21-10491-J*

## APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. Rule 26.1-1, Appellant hereby certifies that the following is a list of all persons and entities that have an interest in the outcome of this case:

1. Kelly H. Chanfrau, Counsel for Plaintiff in state, district, and appellate court;

2. Chanfrau & Chanfrau, P. L., Counsel for Plaintiff in state, district, and appellate court;

3. Benjamin W. Bard, Counsel for Defendant in state, district, and appellate court;

4. Gregory Alan Hearing, Counsel for Defendant in state, district, and appellate court;

5. GrayRobinson, P.A., Counsel for Defendant in state, district, and appellate court;

6. Doris Lapham, Plaintiff/Appellant;

7. Walgreen Co., Defendant/Appellee;

8. Walgreens Boots Alliance, Inc., "WBA" publicly held, Defendant/Appellee;

9. The Honorable Kathryn D. Weston, Circuit Court Judge;

*Doris Lapham v. Walgreen Co.*
*Appeal No. 21-10491-J*

10.The Honorable Paul G. Byron, U. S. District Court Judge, Orlando;

11.The Honorable Daniel C. Irick, United States Magistrate Judge; and

12.The Honorable Gregory J. Kelly, United States Magistrate Judge.

/s/ *Kelly H. Chanfrau*
Kelly H. Chanfrau, B.C.S.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This case presents the Circuit with important questions concerning the proper legal standard to be applied to interference and retaliation claims brought by a single mother with a severely disabled child against her employer under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et seq*., and Florida Whistle-Blower Act ("FWA"). It is the opinion of the undersigned counsel that the decisional process in this case will be significantly aided by oral argument.

# TABLE OF CONTENTS

APPELLANT'S CERTIFICATE OF INTERESTED PERSONS

AND CORPORATE DISCLOSURE STATEMENT ....................................C1-C2

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF CONTENTS.......................................................................ii-vi

TABLE OF AUTHORITIES ............................................................... vii-x

    Cases ....................................................................................... vii-x

    Statutes....................................................................................x

    Rules .......................................................................................x

STATEMENT OF APPELLATE JURISDICTION .................................................1

STATEMENT OF THE ISSUES....................................................................2

STATEMENT OF THE CASE......................................................................3

    I.     The Course of Proceedings and Disposition of the Court Below…. .........3

    II.     Statement of the Facts ...............................................................7

    A.  Doris Lapham, a single mother of a severely disabled child, works for

        Walgreens for over 11 years as a "loyal" and "caring" employee ............ 7-10

    B.  Lapham requests intermittent family leave from her new manager Shelton

        and Shelton stalls on the request for a week, leading Lapham to complain

        about the delay to Shelton and HR ......................................... 10-13

C.  Walgreens sends a letter to Lapham seeking additional information on her
    FMLA request to the wrong address and Lapham only learns of the holdup a
    month and a half later when Shelton denies her a day off to take her son to
    the doctor ............................................................................................. 13-14

D.  Lapham resubmits her FMLA request; Shelton again refuses to sign it,
    denies Lapham days off to care for her son, complains to HR about
    Lapham's requests for leave, and asks if her can terminate Lapham...... 14-17

E.  Her request for intermittent FMLA leave having languished for 50 days,
    Lapham complains to HR that Shelton is interfering with her right to leave
    and retaliating against her; Shelton fires her three days later for
    "insubordination.".................................................................................... 17-19

III.  Statement of the Standard of Review ....................................................20

SUMMARY OF ARGUMENT……………………………………………
........................................................................................................... 21-22

ARGUMENT…………………………………………………………………23

I.    The district court erred when it granted summary judgment on Lapham's
      claims for FMLA retaliation because Lapham presented direct and
      circumstantial evidence of causation sufficient to create a genuine issue
      of material fact for trial..............................................................................23

A. Lapham presented a prima facie case of FMLA retaliation through both direct and circumstantial evidence that Walgreens interfered with her requests for FMLA leave and terminated her because of her exercise of FMLA rights. ..............................................................................24

    1. Lapham presented direct evidence of retaliation ...............................25

    2. Lapham presented circumstantial evidence that Walgreens' proffered nondiscriminatory reasons for firing her was a pretext......................26

        a. Lapham rebutted Walgreens' alleged non-discriminatory reasons for firing her ...................................................................................27

        b. Shelton's hostile comments to Lapham and HR about FMLA and their temporal proximity to Lapham's firing established pretext ..28

        c. The inability of Walgreens' corporate representative to identify any of the underlying facts that led to Lapham's firing is evidence of pretext .......................................................................................30

        d. Evidence that Shelton did not follow Walgreens' FMLA policy and procedures is evidence of pretext ...........................................31

        e. Irreconcilable conflicts in the evidence proffered by Walgreens to try to support Lapham's firing is evidence of pretext...................32

    3. This Court's decision in *Munoz v. Selig Enterprises,* Inc., 981 F.3d 1265 (11th Cir. 2020), is on point and compels reversal ....................32

iv

4. The district court erred as a matter of law when it ruled Lapham had to prove "pretext plus." ........................................................................34

5. The district court erred as a matter of law when it declined to consider any evidence of causation after April 5, 2017....................................36

B. The district court erred when it found Ashley Williams' statement was a dispositive "intervening act." ........................................................................39

C. The district court erred when it failed to apply the correct "motivating factor" standard of causation that applies to FMLA claims.........................43

D. Even if the "but for" standard of causation applied, the district court misapplied that standard ..............................................................................46

II. The district court erred in dismissing Lapham's FMLA interference claim because Lapham presented evidence from which a reasonable jury could find Walgreens interfered with her attempts to exercise her FMLA rights ..............................................................................................................49

A. Lapham presented evidence of interference that precluded summary judgment ............................................................................................50

B. The district court erred when it ruled that Lapham's FMLA interference claim hinged on her ability to prove retaliation ..............53

III.    The district court erred when it dismissed Lapham's Florida Whistle-Blower Act (FWA) claims based on her complaints of FMLA interference ................................................................................55

CONCLUSION……………………………………………………………...56

CERTIFICATE OF COMPLIANCE……………………………………..58

CERTIFICATE OF SERVICE……………………………………………59

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Aery v. Wallace Lincoln-Mercury, LLC,* 118 So.3d 904 (4th DCA 2013) .... 56

*Bachelder v. Am. W. Airlines,* 259 F.3d 1112, 1125 (9th Cir. 2001) ............. 44

*\*Batson v. Salvation Army,* 897 F.3d 1320 (11th Cir. 2018) ................... 46,53

*Blash v. City of Hawkinsville,* _____ Fed. Appx. ___ 2021 WL 1561347

   (11th Cir. 2021) .......................................................................... 43

*\*Bostock v. Clayton County, 140 S. Ct. 1731, 1739, 1744*

   *(2020)* ................................................................. 47, 48, 49, 56

*\*Burrage v. U. S.,* 571 U. S. 204, 211-213 (2014) .......................... 47, 49, 56

*Diamond v. Hospice of Florida Keys,* 677 Fed. Appx. 586

   (11th Cir. 2017) ...................................................................... 46

*Drago v. Jenne,* 453 F.3d 1301, 1308

   (11th Cir. 2006) ..................................................................... 37,38

*\*Egan v. Delaware River Auth.,* 851 F.3d 263, 272 (3d Cir. 2017) ............. 44

*Gamba v. City of Sunrise,* 157 Fed. App. 112 (11th Cir. 2005) ................... 54

*\*Goelzer v. Sheboygan Cty.,* 604 F.3d 987, 995 (7th Cir. 2010) ................. 45

*Gogel v. Kia-Motors Manufacturing of Ga., Inc.,967* F. 3d. 1121,

   2020 WL 4342677, at 10 (11th Cir. 2020)(enbanc) ...................... 4, 5, 42

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) ........................... 45

*Henderson v. FedEx Express,* 442 F. Appx. 502, 506

(11th Cir. 2011)....................................................................... 39, 40

*\*Herren v. La Petite Academy, Inc.,* 820 Fed. Appx. 900

(11th Cir. 2020)........................................................................ 54, 55

*\*Hite v. Vermeer Mfg. Co.,* 446 F.3d 858, 865 (8th Cir. 2006) ................... 46

*\*Hunter v. Valley View Local Sch.,* 579 F.3d 688, 692-93

(6th Cir. 2009).............................................................................. 44

*\*Ion v. Chevron, USA Inc.,* 731 F.3d 379, 390 (5th Cir. 2013).................... 45

*\*Jones v. Gulf Coast Health Care of Del., LLC,* 854 F.3d 1261, 1270-1271

(11th Cir. 2017) .................................................... 23, 25, 30, 46

*Krutzig v. Pulte Home Corp., 602* F. 3d 1231, 1235 (11th Cir. 2010). ......... 54

*Malin v. Hospira, Inc.,* 762 F.3d 552, 562 n. 3 (7th Cir. 2014).................... 45

*\*Martin v. Brevard County Public Sch.,* 543 F.3d 1261, 1265, 1267-68

(2008)................................................................... 20, 23, 29, 46

*\*McDonnell Douglas Corp. v. Green,* 411 U.S. 792

(1973)......................................................... 23, 24, 25, 26,55 ,56

*Morrison v. Booth,* 763 F.2d 1366 (11th Cir. 1985)...................................... 31

*\*Munoz V. Selig Enterprises, Inc.,* 981 F. 3d 1265, 1275, 1276-79, (11th Cir.

2020) ........................................... 23, 24, 26, 27, 28, 30, 32, 33, 36, 37, 38

*\*Pereda v. Brookdale Senior Living Cmtys. Inc.,* 666 F. 3d 1269, 1276

(11th Cir. 2012) ........................................................................ 53

*Ramji v. Hospital Housekeeping Systems, LLC*, 992 F. 3d 1233, 1242, 1245,

1247 (11th Cir. 2021) ........................................................ 50, 51, 52, 53

*Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133

(2000) ............................................................................... 35, 36

*Richardson v. Monitronics Int'l. Inc.,* 434 F.3d 327, 333

(5th Cir. 2005) .................................................................. 45

*Salem v. City of Port St. Lucie,* 788 Fed. App'x. 692, 696

(11th Cir. 2019) ................................................................. 46

*Sierminski v. Transouth Fin. Corp.,* 216 F. 3d 945,950-51

(11th Cir. 2020) ................................................................ 55

*Smith v. Allen Health Sys.,* 302 F.3d 827, 833 n. 6 (8th Cir. 2002) .............. 45

*Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321, 1327 n. 23

(11th Cir. 2011) .............................................................. 20, 41

*Spakes v. Broward County Sheriff's Office,* 631 F.3d 1307, 1310

(11th Cir. 2011) ............................................................... 50

*Springer v. Convergys-Customer-Mgmt. Grp. Inc.,* 509 F.3d 1344, 1349 (11th

Cir. 2007) ..................................................................... 34, 36

*St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511-512 (1993)… 35, 36

*Staub v. Proctor-Hosp.,* 562 U.S. 411, 420 (2011) .................................... 43

*Strickland v. Water Works and Sewer Bd. Of Birmingham*, 239 F.3d 1199,

    1206-07, 1208 (11th Cir. 2001) ........................................................ 50, 55

*Tolan v. Cotton,* 572 U.S. 650, 656 (2014)................................................... 20

*Univ. of Tex.-SW Med. Ctr. V. Nassar,* 570 U.S. 338, 360 (2013).............. 45

*Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 957

    (11th Cir. 2009)......................................................................................... 40

*Woods v. START*, 864 F.3d 158, 169 (2d Cir. 2017) ................................. 44

**STATUTES:**

28 USC § 1291 ............................................................................................... 1

28 USC § 1331 ............................................................................................... 1

28 USC § 1367 ............................................................................................... 1

29 USC § 2601 ................................................................................................. i

29 USC § 2612(a)(1)(C) ............................................................................... 50

29 USC § 2615 (a)(1)................................................................................... 50

29 USC § 2615 (a)(1)-(2).............................................................................. 23

29 USC § 2615 (a)(2).................................................................................... 23

**RULES:**

29 C.F.R. § 825.220(c)........................................................................ 23, 44, 45

29 C.F.R. § 825.300 (b)(1) and (c) and (1) ................................................ 52

29 C.F.R. § 835.300(c(1)(i), (iii and (iv) ..................................................... 51

29 C. F. R. § 825.301 .................................................................................... 51

# STATEMENT OF APPELLATE JURISDICTION

This is an appeal from a final judgment of the United States District Court for the Middle District of Florida.  The district court had jurisdiction under 28 U.S.C. § 1331 based upon a federal question under the "Family and Medical Leave Act." (Doc.1-3).  The district court had supplemental jurisdiction relating to the state law claim ("Florida Whistle Blower Act") under 28 U.S.C. § 1367. Judgment was entered on January 15, 2021.  (Doc.90).  A judgment awarding costs was entered on May 11, 2021 (Doc.100).  Plaintiff Doris Lapham timely filed a notice of appeal on February 11, 2021 and again on February 12, 2021. (Doc.94&95). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

I.     Did the district court err when it granted summary judgment on Lapham's claims for FMLA retaliation when Lapham presented direct and circumstantial evidence of causation sufficient to create a genuine issue of material fact for trial?

II.    Did Lapham prove pretext, and did the district court err when it granted summary judgment and required Lapham to prove an elevated "pretext plus?"

III.   Did the district court err as a matter of law when it declined to consider any evidence of causation, and Lapham's protected activities after April 5, 2017?

IV.    Did the district court err when it failed to apply the correct "motivating factor" standard of causation that applies to FMLA claims?

V.     If the "but for" standard of causation applies, did the district court misapply the "but for" standard?

VI.    Did the district court err in dismissing Lapham's FMLA interference claim?

VII.   Did the district court err when it dismissed Lapham's Florida Whistle-Blower Act (FWA) claims based on her complaints of FMLA interference?

## STATEMENT OF THE CASE

### I.    The Course of Proceedings and Disposition of the Court Below

This is an appeal from the district court's summary final judgment in favor of

Walgreens on Lapham's claims for violations of the Family and Medical Leave Act

(FMLA), the Florida Whistle-Blower Act (FWA), and the Florida Civil Rights Act

(FCRA). (Doc.88&68).   Lapham   filed   her   lawsuit   in   state   court.    (Doc.1-3).

Walgreens removed the case to federal court and filed a motion to dismiss.  (Doc.1&

7).

Lapham filed an amended complaint. (Doc.12&13) Walgreens filed a motion to

dismiss the amended complaint. (Doc.16).  Lapham filed a response. (Doc.17).  The

district court granted Walgreen's request to dismiss Lapham's FRCA claim but

denied its request to dismiss Lapham's other claims. (Doc.24).  Walgreens moved

for summary judgment. (Doc.33).  For the FWA claim, Walgreens argued Lapham

had failed to show an actual violation of a law, or an objectively reasonable belief

that any law, rule, or regulation had been violated. (Doc.33,p.16).  As to her FMLA

claims and her FWA claims, Walgreens argued Lapham could not prove causation

with regard to certain protected activity. (Doc.33,p.23). Walgreens next argued

Lapham could not prove the reason for her firing, which Shelton had claimed was

due to "insubordination," was a pretext for retaliation under the FMLA or the FWA.

(Doc.33, p.23).  Finally, Walgreens argued Lapham's FMLA interference claim

3

must also fail on the premise she was not denied a benefit to which she was entitled because she was fired before her request was processed. (Doc.33, p.25). Lapham responded. (Doc.46). Lapham outlined the evidence that supported her FWA and FMLA claims, and in particular the evidence that showed her protected activity was the cause of her termination. (Doc.46,p.13&16). Lapham detailed the evidence from which a jury could reasonably conclude Shelton's proffered reason of "insubordination" was merely a pretext. (Doc.46, p.19). Finally, Lapham pointed out several ways in which the evidence showed Walgreens had interfered with her FMLA rights. (Doc.46, p.19). Walgreens filed a reply to Lapham's response. (Doc.52). For the first time, Walgreens argued that based upon *Gogel v. Kia Motors Manufacturing of Ga., Inc.,* 967 F.3d 1226 (11th Cir. 2020), Lapham had to prove her protected activity was the "but for" cause of her termination. (Doc.52). Walgreens argued Lapham had failed to prove pretext. (Doc.52, p.2). Lapham filed a sur-reply. (Doc.59). Lapham's sur-reply explained the timing of her protected FMLA activities, her FMLA complaints, Shelton's comments, and her whistleblower complaints within extremely close proximity to her firing easily established a causal connection. As for pretext, Lapham pointed to record evidence of pretext, including but not limited to outlining Walgreens' corporate representative was unable to identify any facts whatsoever that substantiated Walgreens alleged reasons for firing Lapham. (Doc.59, p.3). Lapham also explained Walgreens'

reliance on *Gogel* was misplaced. (Doc.59, p.1&2).  For one thing, *Gogel* was not an FMLA case. (Doc.59, p.1&2). In the FMLA context, the Eleventh Circuit and Supreme Court had never required "but for" causation.  (Doc.59, p.1&2). Lapham asserted "but for" causation was also misplaced in the FWA context.  (Doc.59, p.2). Also, other circuits have routinely held a plaintiff need only prove their protected FMLA activity was a "motivating factor" in their termination – a causation standard easily met in this case.  Also, the record evidence in this case would easily permit a jury to find causation under either the "but for" or "motivating factor" standard in this case.   Finally, Lapham again pointed out it was Walgreens' burden to establish her FMLA rights were not interfered with, and she had raised facts sufficient to establish a FMLA interference claim.  (Doc.59, p.5).  The district court denied Walgreens' motion as to Lapham's FWA claims that hinged on her FMLA interference complaints, but granted the motion as to Lapham's complaints about safety violations. (Doc.68). The district court denied Walgreen's motion as to Lapham's FMLA retaliation claims.  (Doc.68, p.15).  The district court concluded Lapham had presented sufficient evidence of pretext from which a reasonable factfinder could conclude Shelton, the manager who fired Lapham, was hostile to Lapham's attempt to exercise her FMLA rights and Shelton's complaints about Lapham's FMLA requests made just prior to Shelton terminating Lapham evinced

5

the termination was more likely motivated by Shelton's hostility towards Lapham's FMLA requests than by Lapham's work performance. (Doc.68, p.22).

As to Lapham's FMLA interference claim, the district court found Lapham provided enough evidence to create a question of fact, and a reasonable jury could find Walgreens denied Lapham a benefit to which she was entitled. (Doc.68, p.24). Finally, the district court held to the extent Lapham suffered prejudice as a result of Walgreens' denial of requests for FMLA leave, Walgreens' motion was denied. (Doc.68, p.26). Dissatisfied, Walgreens filed a motion for reconsideration arguing, as it had in its sur-reply, the "but-for" causation standard should be applied and Lapham's claims dismissed in their entirety under that standard. (Doc.72). Lapham again timely responded to the motion. (Doc.81).

The district court reversed itself and granted Walgreens' motion for reconsideration, dismissing Lapham's claims. (Doc.88). The district court now concluded that while Shelton's complaints about Lapham were more likely motivated by FMLA hostility than any purported performance problems—thus satisfying a "motivating factor" causation standard—that same evidence was not enough to establish "but for" causation" (Doc.88, p.7). According to the district court, Lapham's poor performance provided an independent, non-retaliatory basis for her firing. (Doc.88, p.7). In applying the "but for" standard of causation, the

6

district court appeared to believe Lapham was required to prove the unlawful motive was the ***sole cause*** of the challenged action, rather than one of the "but for" causes.

The district court concluded Lapham failed to produce evidence that Walgreens' proffered reason for her firing (poor work performance) was merely a pretext to mask the ***real reason*** (FMLA retaliation). (Doc.88,p.8).  For the same reasons, the district court granted Lapham's remaining FWA claim based on her complaints of FMLA interference.  The district court's order discussed some of the evidence, but never expressly considered or stated what a reasonable jury could have found based upon the evidence.  The district court also dismissed Lapham's FMLA interference claims because Lapham could not prove retaliation. (Doc.88, p.8).

The district court granted Walgreens' motion for reconsideration on January 14, 2021. (Doc.88).  It entered judgment in Walgreens' favor on January 15, 2021. (Doc.90).  Lapham timely filed her notices of appeal on February 11 and 12, 2021. (Doc.94&95).

## II. Statement of the Facts

**A.    Doris Lapham, a single mother of a severely disabled child, works for Walgreens for over 11 years as a "loyal" and "caring" employee.**

Doris Lapham is a single mother, whose son, Jake, is severely disabled, wheelchair bound, non-verbal, and completely unable to care for himself.  (Doc.34, p.9,10&80).  Lapham, whose highest level of education is a GED, began to work at

7

Walgreens in 2006 as a service clerk. (Doc.34, p.7&79; Doc.34, p.9, Doc.34-2, p.9). Walgreens later transferred her to a position as a photo specialist, then promoted her to Drug Store Management Trainee. (Doc.34-2, p.9). In 2012, Lapham stepped down from the management training position to take a shift lead position because she needed time to care for Jakes's deteriorating health and medical issues. (Doc.34, p.9).

From 2011 through 2016, Lapham requested and received from Walgreens intermittent FMLA on a yearly basis so she could provide needed care for Jake. (Doc.34, p.43&81). During this same time period, Walgreens routinely gave Lapham positive reviews with few exceptions. (Doc.50, p.1). One Store Manager, Michael Rivera, knew of Jake's disabilities and testified Lapham tried hard to take care good employee while taking care of Jake. (Doc.51, p.1-2). He described Lapham as dependable worker, a team player, someone who would fill in, a good personality, did not have problems with co-workers, and tried to be a good employee. (Doc.51, p.1-2).

Walgreens has a four (4) step disciplinary-process policy. (Doc.34-3, p.40-41). Over her 11-year career, Walgreens issued Lapham only one disciplinary written warning. (Doc.50, p.1). That warning, issued in January 2015, chastised Lapham for failing to help unload a truck one night after she had returned to work after surgery for a hip injury. (Doc.34, p.27). Lapham advised she was still

8

recovering from the surgery at the time and had been told not to lift items over 20 pounds. (Doc.34, p.27).

Later that same year, though, in September of 2015, Walgreens issued Lapham her highest review performance review yet. (Doc.50, p.1). Her Manager wrote Lapham, "knows what her manager expects from her position," and "she has a lot of knowledge," and "she has shown commitment for our store condition." (Doc.34-1, p.42-50). In the fall of 2016, Walgreens issued Lapham a lower than-average review (2.3) on her annual evaluation because, after 6 years of working the night shift, she moved to a day shift and needed time to learn daytime procedures and training. (Doc.35-1, p.1-8; Doc.34, p.12). Yet, Walgreens noted she "responds to customer needs in a friendly and respectful manner," and "demonstrates product and store knowledge," and "now that she is on day shift, she will have the opportunity to learn and grow." (Doc.35-1, p.1-8). While Lapham received a lower than-average review, her Manager, Chad Dunlap, described Lapham as a loyal employee who followed directions, was not insubordinate, and got along well with others (Doc.35, p.7&12). He testified he would not have recommended firing Lapham due to any alleged performance problems. (Doc.35, p.14). Even the manager who fired Lapham after she had been with Walgreens for 11 years admitted Lapham was a loyal employee who cared about the company, the customers, and the store. (Doc.38, p.36).

In late 2016, Lapham was properly performing her job. (Doc.35, p.11). Lapham requested a transfer from the Sanford store to Daytona Beach so she would be closer to Jake during the day. (Doc.35, p.10 &11). Dunlap approved the transfer. (Doc.35, p.10-11). In late January 2017, Lapham transferred to Daytona Beach Store # 4423 under a new Store Manager, Lisa Shelton. (Doc.34, p.9).

Despite her 11 years successfully working for Walgreens as a loyal and caring employee, her proper performance of her job at the Sanford store, and a history of being able to take intermittent family leave to care for her disabled child, less than two-and-a-half months of her transfer to Daytona Beach her new Store Manager Shelton fired Lapham shortly after she sought intermittent FMLA leave. (Doc.34, p.47; Doc.34-3, p.1-3; Doc.51-9). As explained further below, Shelton first delayed, then denied Lapham's request for time off to care for her child, then complained to human resources about the request and had Lapham fired while it was still pending with Walgreens.

Before Shelton fired Lapham on April 13, 2017, Walgreens did not issue any disciplinary warnings, verbal or otherwise, to Lapham. (Doc.49, p.13-14;Doc.38, p.22).

**B.  Lapham requests intermittent family leave from her new manager Shelton and Shelton stalls on the request for a week, leading Lapham to complain about the delay to Shelton and HR.**

Lapham's first weeks at the new Store were uneventful, Shelton told Lapham

10

she would be an asset, thought she was doing a good job and she planned to continue to train and develop her. (Doc. 38, pg. 25, Doc. 35, pg. 12; Doc. 35-1, pg. 9). Then, in mid-February 2017, two events occurred. The first was a new, Walgreens nationwide policy change required all employees who had received less than a 3.0 on a prior performance evaluation be placed on a 60-day Performance Improvement Plan (PIP). (Doc.35, p.12). Because Lapham had received a 2.3 on her fall 2016 evaluation, Regional Manager Nicole Macek told Shelton to put Lapham on a PIP for this reason. (Doc.35, p.12). Walgreens did not retain the PIP Shelton gave Lapham as evidence for this litigation. (Doc.49, p.12). In any event, Shelton admitted Lapham was not fired for work performance issues nor was the PIP the basis for her firing. (Doc.38, p.22&38). And in its court filings below, Walgreens expressly *disavowed* the PIP had anything to do with Lapham's later firing. (Doc.52, p.2).

The second occurrence was Lapham's request to Shelton for intermittent FMLA leave. Lapham had received intermittent FMLA leave during her time at the Sanford store without incident. Shortly after she transferred to the Daytona Beach store, Lapham's prior request for intermittent FMLA leave was about to expire. (Doc.39-4, p.4; Doc.34-2, p.11-14 & Doc.34-4, p.114;). On February 16, 2017, Lapham requested intermittent FMLA leave from February 16, 2017 to February 16,

11

2018, due to Jake's serious health conditions. (Doc.34, p.41-43; Doc.34-2, p.11-14 & Doc.34-4, p.114).

To request intermittent FMLA leave to care for a child with a serious health condition, Walgreens' policy required Lapham to submit a Request for Leave Form #1372 and a Certification of Health Care Provider #769. (Doc.34-2 p.19-20, Doc.36-1, p.42-51). Walgreens' FMLA policy mandated employees "must" provide "notice" to her manager. (*Id*: pg. 3). Request Form #1372 then required Lapham to obtain the signatures of both her Store Manager—Shelton—and a District Manager before submitting the form to HR. (Doc.36, p.10; Doc.36-1, p.47). Lapham's FMLA request included the reasons she needed leave, the serious health conditions of Jake, her address, a doctor's certification, and on the page before the signature page, in large letters, the words: "FMLA is expected [sic] from 2/16/17 through 2/16/18." (Doc.36-1, p.46).

Walgreens' FMLA policies and federal law required it to respond to Lapham's FMLA leave within five days. (Doc.36, p.9&12). Instead of approving, signing, and processing Lapham's FMLA request by sending it to HR, Shelton refused to sign off on Lapham's FMLA forms. (Doc.34, p.40-42&50). After a week passed, on February 23, 2017, Lapham complained to both, Shelton directly and to HR that her FMLA has not been granted. (Doc.34, p.40-42&50).

Even after Lapham complained to HR about Shelton's refusal to sign and grant her February 16, 2017 FMLA request, Shelton delayed submitting the request for another four days. (Doc.34, p.42). Shelton finally signed off on Lapham's FMLA paperwork and submitted it to HR on February 27, 2017. (Doc.34, p.41-42). (Doc.51-4, p.1-6). That day, Jake's doctor faxed Walgreens form # 769. (Doc.51-1, p.1-5).

On March 12, 2017, Shelton and Lapham met to discuss her PIP and Shelton told Lapham she was doing a "*good job*" and Lapham had completed the first part of her PIP. (Doc.34, p.72&73).

**C.  Walgreens sends a letter to Lapham seeking additional information on her FMLA request to the wrong address and Lapham only learns of the holdup a month and a half later when Shelton denies her a day off to take her son to the doctor.**

Lapham received no word from Walgreens about the status of her request within the five days required by Walgreens' policies and federal law. (Doc.36, p.9,12, 14, 23, 15,&18; Doc.34, p.87&88 & Doc.34-2, p.10). Assuming it had been granted as it had routinely been in the past, over a month later on March 31, 2017, Lapham asked Shelton if she could take one FMLA day off to take Jake to a doctor's appointment. (Doc.36-1, p.56; Doc.34, p.66). Shelton and Walgreens denied the request "not approved" as Shelton told Lapham to make "other arrangements." (Doc.36-1, p.56; Doc.34, p.66) Shelton called HR and was told HR needed a "start date," and HR explained what intermittent FMLA was to Shelton. (Doc.36-1, p.56). Lapham called HR and HR told her it had sent her a letter on March 3, 2017 to her incorrect address, explaining HR needed a "start date" and Lapham told HR she

13

would immediately send in the information HR needed. (Doc.36-1,p.56). Unbeknownst to Lapham, and despite the fact that her February FMLA request had included her correct address on the cover page, Walgreens sent a "Notice of Rights and Responsibilities" letter to her wrong address on March 3, 2017. The Medical Certification had identified the complete dates of leave, (but the front page of the request) was blank. (Doc.34, p.87&88; Doc.34-2, p.10-14; Doc. 34-4, p.114; & Doc.36, p.15-18).

**D.   Lapham resubmits her FMLA request; Shelton again refuses to sign it, denies Lapham days off to care for her son, complains to HR about Lapham's requests for leave, and asks if she can terminate Lapham.**

When Shelton denied her request for a day off to take Jake to the doctor and told Lapham that HR wanted a "start date" for the leave, Lapham immediately filled out another intermittent FMLA request. (Doc.34, p.47& Doc.34-3, p.1&2). She carefully filled in a start date and immediately gave it to Shelton. (Doc.34, p.47 & Doc.34-3, p.1&2). However, Shelton ***again*** refused to sign off on the FMLA request or grant her the day off. (Doc.34, p.66&67). Lapham complained to Shelton that she needed her to sign the request and send it to HR because it was for her son's FMLA and needed the time to attend for her son's medical needs. (Doc.34, p.66&67). Lapham complained she had always had her FMLA requests approved in the past. (Doc.34, p.66&67). Shelton responded: "No, the schedule is already up," and "make other accommodations." (Doc.34, p.66&67). Lapham again requested FMLA day off to take her son to the hospital for treatment sometime after March 31 but before April 4 and Shelton still had not signed off on Lapham's FMLA

14

paperwork and sent it to HR. (Doc.34, p.71 & Doc.51-5, p.1). Shelton again denied the request, telling Lapham: "Make accommodations for your son because I already did the schedule and you need to be able to do your job and you are not doing your job." (Doc.34, p.71).

On April 4, 2017, Shelton called HR to complain about Lapham for the very first time since working with her. (Doc.51-5, p.1). At the time, Shelton still had not signed off on Lapham's March 31, 2017 FMLA request—the follow up to her February 17, 2017 request (Doc.38, p.32; Doc.34, p.47-48 & Doc.34-3, p.1&2). Walgreens internal logs document that Shelton expressly **complained** to HR that Lapham "*Requested an intermittent [FMLA] leave and is calling in frequently.*" (Doc.51-5, p.1). For the very first time, Shelton alleged Lapham "was not performing work and lying" (Doc.51-5, p.1).

Shelton called HR to complain about Lapham again the next day, on April 5, 2017. (Doc.51-5, p.1). Shelton *still* had not signed or processed Lapham's FMLA request from March 31, 2017. (Doc.38, p.32; Doc.34, p.47 & Doc.34-3, p.1&2). Shelton now claimed Lapham was not completing work, disregarding instructions, and lying and provided zero details or dates on these alleged incidents. (Doc.51-5, p.1). In contrast, her very last and most detailed complaint about Lapham was, once again, specifically about Lapham's FMLA requests and protected activities. (Doc.51-5, p.1). According to Walgreens' records, Shelton stated, "[Lapham] has recently applied for intermittent FMLA (pending approval). [Lapham] has already called out for 2 days due to her FMLA and it is not even approved yet." After

15

expressly complaining about Lapham's protected FMLA requests, Shelton asked HR if she could terminate Lapham or if she would have to move forward with Lapham's PIP before doing so. (Doc.51-5, p.1).

HR advised Shelton she could *not* terminate Lapham under the circumstances. Instead, HR directed Shelton that she needed to document the behavior she was alleging, obtain statements from those involved, and review it all with the District Manager, Nicole Macek, *before* moving to termination. (Doc.51-5, p.1). HR also advised Shelton that *if* Shelton and the district manager decided to ultimately terminate Lapham, the reason for the termination should be "poor performance." (Doc. 51-5, p.1). But HR directed Shelton that she should not issue any discipline for attendance until Lapham's FMLA request was either approved or denied. (Doc.51-5, p.1). HR also warned Shelton she should not discipline Lapham for absences related to FMLA but told her if Lapham missed work, Shelton could extend her PIP for the same period of time. (Doc.51-5, p.1).

The day after Shelton's two sequential complaints to HR about Lapham's FMLA requests, on April 6, 2017, Lapham requested another FMLA day off because her son's nurse was in the hospital, and Lapham needed to stay home to provide care for her son. (Doc.34, p.67 & Doc.51-6, p.1). Shelton again **denied** her request for the day off and made her come into work. (Doc.34, p.67 & Doc.51-6, p.1). The next day, April 7, Lapham again complained again to Shelton and/or HR that Shelton was denying her FMLA leave. (Doc.34. p.50,89&91). As before, it was only after Lapham complained Shelton *finally* signed off on Lapham's renewed FMLA request

16

from March 31 and forwarded it to HR.  (Doc.34, p.47&91; Doc.38, p.32; & Doc.34-3, p.1&2).

**E.    Her request for intermittent FMLA leave having languished for 50 days, Lapham complains to HR that Shelton is interfering with her right to leave and retaliating against her; Shelton fires her three days later for "insubordination."**

Lapham called HR on April 10, 2017, (her FMLA still not resolved), to complain that Shelton was denying her FMLA leave, interfering with her requests, and retaliating and discrimination against her because of them, creating a hostile work environment.  (Doc.34,p.50,77-78,91&112).    HR told Lapham it would investigate her complaints and talk to Shelton. (Doc.34, p.50, 57&112 & Doc.38, p.49).  HR also told Lapham that Shelton would be transferring out of the store later that week and a new store manager would be taking over. (Doc.34, p.50 & Doc.38, p.49).  HR assured Lapham she would have an opportunity to step down to another position if she wanted to, and she would have 3 weeks to a month to finish her PIP. (Doc.34, p.50 & Doc.38, p.49).  HR then called Shelton that same day and instructed her she had to continue with Lapham's PIP. (Doc.38, p.49).

The next day, April 12, 2017, HR sent Shelton an email instructing her a PIP is a 60-day process. (Doc.38-1, p.51-52).    Shelton wrote out an extension of Lapham's PIP, which stated "Doris wants to improve on effective delegation of tasks, setting clear expectations, [and] follow up on tasks," with an outline of items including, "Doris will be completing pricing and inventory reports on her schedule days." (Doc.38-1, p.54). The memorandum noted that Lapham would meet with the new store manager weekly to check in.  (Id.).

17

Under investigation by HR and having been instructed to continue with Lapham's PIP, Shelton took action against Lapham.  The same day she wrote out the extension for Lapham's PIP, Shelton obtained a statement from Lapham's fellow Shift Lead Ashley Williams. Williams' statement alleged that on that day, April 12, Lapham instructed other employees to help Lapham on tasks in the stock room rather than unload a u boat (cart) as an assistant manager had requested and said Lapham and other employees failed to unload a truck. (Doc.40, p.1-2&Doc.40-1, p.1).

Notably, Shelton's PIP memorandum written the same day mentions nothing about this incident. There is no email to or from HR documenting this incident, nor is there any evidence that anyone asked Lapham about it. (Doc.38, p.49-50; Doc.38-1, p.54 & Doc.34, p.50). In the proceedings below, Lapham vehemently denied Williams' version of events.  She provided a sworn affidavit explaining she "helped work on the truck that day and finish[ed her] assigned tasks. She also testified she observed another Shift Lead not working.  She denied she directed others not to complete tasks.  (Doc.51-9, p.1-4).  Lapham also testified during this case she followed instructions and finished all the tasks given to her unless Shelton changed her mind and directed her to complete something else instead. (Doc.34, p.53-54).

The next day—on April 13, 2017—Shelton fired Lapham and told Lapham it was for "insubordination." (Doc.34, p.69&94; Doc.51-9, p.3-4). *Id*. Lapham told Shelton during the termination meeting that HR was investigating and asked if she was being fired because just a few days ago she had complained Shelton was retaliating against her (Doc.51-24, p.1 & Doc.34, p.51). Shelton told her no, the

18

decision had been made *before* Lapham had made that complaint. (Doc.34, p.51). That explanation was in conflict with what HR had said and done after Lapham's April 10, 2017 call to lodge her concerns about Shelton's interference.

HR found out about Lapham's firing after the fact. (Doc.51-24, p.1&Doc.37, p.18). It was not "involved in the decision to fire" Lapham at all. (Doc.37, p.18). HR Amanda Miranda, who had taken the calls from Shelton about a week earlier complaining about Lapham's need for FMLA leave, admitted she had no part in the decision to terminate Lapham. (Doc.37, p.18). Also, Shelton had gone rogue because she had not reviewed the decision to fire Lapham with District Manager Macek (as directed by HR); (Doc.37, p.18-19; Doc.51-5, p.1&Doc.49, p.25).

On the date she was fired, Walgreens had *still* not acted on Lapham's FMLA request, first sought in mid-February, then renewed at the end of March but not submitted by Shelton to HR until April 7, 2017.  (Doc.34-3, p.1&2).  Five days after she was fired, Walgreens sent Lapham a letter denying her FMLA requests that explained the request was denied because she had been fired. (Doc.34-3, p.3).

## STANDARDS OF REVIEW

This Circuit reviews *de novo* a district court's grant of summary judgment, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party. *Martin v. Brevard County Public Schools,* 543 F.3d 1261, 1265 (11th Cir. 2008). All reasonable doubts about the facts must be resolved in favor of the non-movant. *Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321, 1327 n. 23 (11th Cir. 2011). The Court's function at summary judgement is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton,* 572 U.S. 650, 656 (2014).

## SUMMARY OF THE ARGUMENT

The district court erred when it reversed itself and granted summary judgment on Lapham's FMLA retaliation, FMLA interference and FWA retaliation claims. Lapham had both direct and circumstantial evidence of FMLA retaliation. She established a prima facie case, and introduced evidence that the alleged legitimate, non-discriminatory reasons for her firing were pretextual.  Indeed, Lapham introduced Walgreens' own records that demonstrated that after Lapham requested FMLA leave and engaged in protected activities, Shelton called HR on April 4, and then on April 5, 2017 and complained about her FMLA and asked if she could fire her – which she did just 7 days later.   Lapham established causation, and pretext, through the timing of her protected activities, the hostile comments of Shelton and the temporal proximity to her firing.

This Court should hold that as to FMLA retaliation claims, a "motivating factor" causation standard should apply.  The district court erred when it required Lapham to establish "but-for" causation, however, if this Court requires "but-for" causation, Lapham has proffered evidence to establish her FMLA protected activities were a "but-for" cause of her firing.

The district court erred when it dismissed Lapham's FMLA interference claim because she could not prove she was prejudiced.  Also, the district court erred when it held that Lapham's interference claim hinged on her ability to prove retaliation.

21

Finally, for the same reasons Lapham's FMLA retaliation claims should not have been dismissed, Lapham's FWA claims should likewise not have been dismissed.

## **ARGUMENT**

**I.   The district court erred when it granted summary judgment on Lapham's claims for FMLA retaliation because Lapham presented direct and circumstantial evidence of causation sufficient to create a genuine issue of fact for trial.**

The FMLA prohibits employers from retaliating against employees for engaging in protected activities. *Munoz v. Selig Enterprises, Inc.,* 981 F. 3d 1265 (11th Cir. 2020) (*Citing, Batson v. Salvation Army*, 897 F. 3d 1320, 1328 (11th Cir. 2018) and 29 U.S.C. § 2615(a)(1)-(2)).

To prove FMLA retaliation, one must show her employer intentionally discriminated against her for exercising an FMLA right. See 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c); *Martin*, 543 F.3d at 1267-68. An employee bringing a retaliation claim must present evidence her "employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Martin*, 543 F.3d at 1267-68 (quoting *Strickland,* 239 F.3d at 1207. Lapham can make a prima facie case of retaliation either by (a) presenting direct evidence of retaliatory intent; or (b) through the burden-shifting framework articulated in *McDonnell-Douglas,* 411 U.S. 792; *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1270-71 (11th Cir. 2017); *see also Munoz,* 981 F. 3d at 1265.

Under the *McDonnell-Douglas* analysis, the employee must first make a *prima facie* showing (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between

23

the two. *Munoz*, 981 F. 3d at 1275. If the employee makes such a showing, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse action. *Id.* If the employer does so, the burden shifts back to the employee to produce evidence the employer's reason is pretextual. *Id.*

At the summary judgment stage, the employee is not required to *prove* her claim. She is only required to point to sufficient evidence which, viewed in the light most favorable to the employee, would permit a reasonable jury to find the employer's actions were motivated by a retaliatory or discriminatory animus. *Id.* at 1277-79. Where a jury could interpret an employer's comments as reflecting discriminatory animus or the evidence is in conflict on the employer's intent, summary judgment is error. *Id.*

Here, and as discussed further below, Lapham presented evidence that supported a prima facie case against Walgreens for retaliation under the FMLA. That included direct evidence of Walgreen's retaliatory intent as well as the circumstantial evidence to show that intent under the *McDonnell-Douglas* paradigm. Despite that evidence, the district court granted summary judgment in Walgreens' favor. It did so by applying the wrong legal standards and weighing the evidence that should have been submitted to the jury. For those reasons, the judgment should be reversed.

## A. Lapham presented a prima facie case of FMLA retaliation through both direct and circumstantial evidence that Walgreens interfered

**with her requests for FMLA leave and terminated her because of her exercise of FMLA rights.**

### 1.    Lapham presented direct evidence of retaliation.

The district court granted summary judgment in Walgreens' favor on Lapham's retaliation claim based on the third element in the *McDonnell-Douglas* analysis. That is, the district court believed Lapham did not establish a causal connection between her protected FMLA activity and her termination. In skipping directly to the *McDonnell-Douglas* analysis, the district court ignored the direct evidence that Shelton was motivated to fire Lapham because of her FMLA requests.

Direct evidence of discrimination is evidence that reflects not only a discriminatory or retaliatory attitude, but one that is correlated to the retaliation complained of by the employee. *Jones*, 854 F.3d at 1270. Here, evidence showed on April 4 and 5, 2017, manager Shelton called HR and expressly complained that Lapham was requesting FMLA leave. (Doc.51-5, p.1). She did so while she was holding up Lapham's March 31 request for leave by refusing to sign off on it. (Doc.38, p. 32; Doc.34, p.47 & Doc.34-3, p.1-2). And in the call of April 5, Shelton not only repeated her complaints that Lapham was requesting FMLA leave to care for her son, she did so while expressly asked HR if she could terminate Lapham. (Doc.51-5, p.1). These calls, made days before firing Lapham, —the content of which is reflected in Walgreens' own records—directly correlates Shelton's desire to fire Lapham due to her FMLA protected activities, without inference or

presumption. That Shelton coupled her FMLA complaints with other vague complaints she never bothered to substantiate is of no moment. For this reason alone, the summary judgment on Lapham's claims of retaliation should be reversed.

>**2.**    **Lapham presented circumstantial evidence that Walgreen's proffered nondiscriminatory reason for firing her was a pretext.**

As shown, the direct evidence of Shelton's complaint to HR about Lapham's FMLA leave requests and request to terminate her in the same conversation was sufficient to present a jury question on causation and preclude summary judgment. But even if it were not, and the *McDonnell-Douglas* analysis for circumstantial evidence applied, Lapham presented evidence from which a reasonable jury could find her termination was motivated by her exercise of her FMLA rights.

This Court has held that an employee makes a prima facie case for a causal connection when the employee shows "the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Munoz*, 981 F.3d at 1277 (quoting *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008)). Walgreens' motion for summary judgment acknowledged—and the district court's initial order on summary judgment agreed— that Lapham had presented a *prima facie* case on causation. (Doc.33, p. 23 & Doc.68, p.15, 22-23).

26

Walgreens claimed that it had a nondiscriminatory reason to fire Lapham, namely for job performance issues. (Doc.33, &Doc.49, p.7-9). As a result, Lapham presented evidence showing that Walgreens' proffered reason was pretextual.

This Court recently explained that to show pretext, an employee must introduce evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *See Munoz*, 981 F.3d 1265, (*Citing, Jones,* 854 F.3d at1274. This evidence may include evidence already produced by the employee to establish her *prima facie* case. *Id.* A showing of pretext arises from "weaknesses, implausibility's, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions. *Id.*

Here, Lapham presented evidence that the reason Walgreen proffered for Lapham's termination in this litigation were a pretext for its decision to fire her based on her FMLA requests. The evidence of pretext included the following:

> **a.    Lapham rebutted Walgreens' alleged nondiscriminatory reasons for firing her.**

Walgreens claimed it fired Lapham for insubordination in refusing to complete tasks, instructing others not to do so, and being dishonest. (Doc.38, p.21, 50). To show these reasons were pretext, Lapham presented evidence that she had always completed tasks unless she was told by a manager otherwise, that she had not instructed others not to complete tasks, and she was not dishonest. (Doc.51-9,

27

p.1-4 & Doc.34, p.53-54,60).  On summary judgment, that evidence must be viewed in the light most favorable to Lapham.  Any conflict between Lapham's testimony and that of Shelton merely presents a genuine dispute of fact for the jury to decide.

> **b.** **Shelton's hostile comments to Lapham and HR about FMLA and their temporal proximity to Lapham's firing established pretext.**

Shelton's interference with Lapham's FMLA requests, her comments to HR, her comments to Lapham and her denial of FMLA days off – coupled with their close proximity to Shelton summarily firing Lapham – is evidence that Walgreens' proffered nondiscriminatory reason for firing Lapham is a created-for-litigation pretext. *See Munoz,* 981 F. 3d 1265 (citing *Jones,* 854 F. 3d 1261) and holding supervisor's comments could be construed to reflect retaliatory animus because plaintiff intended to use FMLA leave). Shelton's hostile and discriminatory comments included:

> (1) On March 31, 2017, Shelton told Lapham when refusing her FMLA request to take her son to the doctor: "No, the schedule is already up" and "make other accommodations."  (Doc.34, p.66-67).

> (2) Then, before April 4, 2017, Shelton told Lapham in refusing to allow her to take her son to the hospital: "Make accommodations for your son because I already did the schedule.  You need to be able to do your job and you are not doing your job." (Doc.34, p.71)

28

(3) On April 4, 2017, Shelton complained to HR that Lapham" "Requested an intermittent [FMLA] leave and is calling in frequently." (Doc.51-5, p.1).

(4) On April 5, 2017, Shelton called HR again, stating "[Lapham] has recently applied for intermittent FMLA (pending approval). [Lapham] has already called out for 2 days due to her FMLA and it is not even approved yet." (Doc.51-5, p.1). Shelton's *very* next question was "how long she needed to put up with the behavior and can she terminate. *Id.* Lapham was fired just 7 days later by Shelton.

These facts must be viewed in the light most favorable to Lapham. *See Martin,* 543 F. 3d 1265. From these facts, a reasonable jury could conclude Shelton terminated Lapham because of her FMLA requests, not because of any job performance issues.

Lapham's firing was not only within a one-to-two-week period after Shelton's hostile comments, it was within *three days* of Lapham calling HR to complain Shelton was interfering with Lapham's FMLA requests and retaliating against her. (Doc.34, p.91;Doc.34,p.78 & Doc.51-24). Walgreens told Lapham it would investigate those complaints, then immediately called Shelton, and told her to continue with Lapham's PIP. (Doc.34, p.50,57, 69,94&112; Doc.38, p.49 &

Doc.51-9).        Despite that, Shelton unilaterally fired Lapham three days later. (Doc.34, p.69&94 & Doc.51-9).

This Circuit has routinely held that close temporal proximity between a request for leave and an adverse employment action is evidence of pretext sufficient to survive summary judgment. *Munoz*, 981 F. 3d 1265 (Citing, *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F. 3d 1286 at 1298 (11th Cir. 2006) and *Jones*, 845 F.3d at 1272-73, 1276). Lapham's requests, Shelton's interference, and Shelton's hostile comments to Lapham and HR within two weeks of the day she fired Lapham are "smoking gun" summary-judgment defeating evidence of pretext.

### c.    The inability of Walgreens' corporate representative to identify any of the underlying facts that led to Lapham's firing is evidence of pretext.

In its summary judgment motion, Walgreens argued that Lapham was fired for "sabotaging the store," "dishonesty" and "insubordination." Walgreens' corporate representative was deposed and properly noticed that she would be asked to testify about why Lapham was fired. (Doc.53-1, p.1&Doc.49, p.22). At her deposition, however, the corporate representative could not identify any facts whatsoever to support the claim that Lapham did anything amounting to "insubordination" or "dishonesty." In fact, when asked if she could tell the jury anything that Lapham did before her firing that was dishonest or insubordinate, she answered "No." (Doc.49, p.21). When asked if Lapham did anything to "sabotage

the store," Walgreens' corporate representative responded, "I don't know. No." (Doc.49, p.20&21). This was additional evidence—evidence that would be used at trial to impeach Walgreens' witnesses—that the reasons Walgreens proffered in its motion were pretextual.

> **d.    Evidence that Shelton did not follow Walgreens' FMLA policy and procedures is evidence of pretext.**

Shelton acknowledged that with *other* employees' FMLA requests, she helped the employees "from start to finish" by making sure everything was signed, getting the district manager's signature, and faxing it to corporate. But with Lapham, Shelton did not help her at all.  (Doc.38, p.30).  To the contrary, she held on to Lapham's FMLA requests and only signed and submitted them when Lapham complained about the delay. (Doc.34, p.40-42&50; Doc.51-1, p.1-5; Doc.34, p.47 & Doc.34-3, p.1-2).  A factfinder could reasonably find that Shelton had a hostile motive when it came to Lapham's FMLA. The fact that Shelton treated other employees better *and* followed the FMLA process and procedures with others (but not Lapham), is evidence or pretext.  *See e.g., Morrison v. Booth,* 763 F.2d 1366 (11th Cir. 1985) ("Departures from normal procedures may be suggestive of discrimination."). Also, Shelton clearly failed to follow HR direction when it came to firing Lapham – because she failed to obtain review of her District Manager before unilaterally firing Lapham. This was also a departure from Walgreens' procedures. (Doc.51-5, p.1; Doc.37, p.19 & Doc.49, p.25).

31

### e. Irreconcilable conflicts in the evidence proffered by Walgreens to try to support Lapham's firing is evidence of pretext.

Store Manager Ralph Yourie made the following statement on behalf of Walgreens in a written submission to Unemployment Compensation after Lapham's firing:

> In early April 2017, Lisa reached out to Walgreens Employee Relations for advice regarding how to proceed with further disciplinary action. Employee Relations said that given the volume of violations and the failure to improve, Doris should be fired immediately for insubordination. (Doc.49-1, p.1-2).

Yourie's statement is in hopeless conflict and cannot be reconciled with the other documentary and testimonial evidence Walgreens has produced in this case. That record evidence in this case shows that HR did not *ever* give the go-ahead to permit Shelton to fire Lapham "immediately." (Doc.51-5, p.1; Doc.37, p. 18 & Doc.38, p.49). This evidence of pretext, viewed in Lapham's favor, created a genuine issue for trial. A factfinder could find Walgreens' numerous misstatements were an after-the-fact attempt to cover up the truth – that Shelton got rid of Lapham due to an FMLA retaliatory animus.

### 3. This Court's decision in *Munoz v. Selig Enterprises*, Inc., 981 F. 3d 1265 (11th Cir. 2020), is on point and compels reversal.

32

In *Munoz*, this Court reversed a similar summary judgment entered on a plaintiff's claim of FMLA retaliation. The plaintiff in *Munoz* alleged that she had been terminated because she requested a need for future FMLA leave. *Id.* at 981 F.3d at 1275. The employer contended it fired Munoz for "insubordination, ineffectiveness, and her tendency to handle personal projects while at work." *Id.* at 1277. Based on *the plaintiff's* testimony, this Court concluded there were genuine disputes of fact on causation that precluded summary judgment. *Id.* at 1276-79. The plaintiff's testimony showed that her employers had made negative comments about her absences due to illness, that they did not reprimand her for other conduct, and that they only monitored her behavior once she told them of her need for leave. *Id.* That testimony, coupled with the close temporal proximity between the plaintiff's requests for leave and her termination, presented a genuine dispute of fact for the jury. *Id.*

Here as in *Munoz*, Lapham presented evidence of derogatory comments about her requests for FMLA leave; evidence she was not informed of, disciplined, or reprimanded for the reasons Walgreens proffered in litigation; and that she was fired while her request for leave was pending and only three days after she complained to HR that Shelton was interfering with her FMLA request and retaliating against her. In truth, Lapham's evidence is even stronger than the evidence that prohibited summary judgment in *Munoz*. Lapham's pretext evidence is supported not only by

her testimony but also by Walgreens' corporate records and includes the call-in which Shelton directly connected her animus over Lapham's FMLA requests to her desire to fire Lapham. The district court erred when it granted summary judgment on this evidence.

### 4.    The district court erred as a matter of law when it ruled Lapham had to prove "pretext plus."

In its initial order on summary judgment, the district court correctly concluded that Lapham had presented sufficient evidence of pretext. It stated:

> A reasonable fact-finder could infer from the above chain of events, combined with Shelton's statements to Employee Relations and their close temporal proximity to Plaintiff's termination, that Shelton's complaints, and Plaintiff's resulting termination --- were more likely motivated by that hostility than Plaintiff's work performance. Accordingly, Plaintiff has presented evidence enough to create an issue of fact regarding pretext.

But in its order granting reconsideration, the district court reversed course. It held Lapham had *not* established pretext. (Doc.88). The district court concluded that a reason is not pretext unless the plaintiff can show *both* that the reason is false, *and* that retaliation was the real reason. (Doc.88) citing *Springer v. Convergys Customer Mgmt. Grp. Inc.,* v. 509 F. 3d 1344, 1349 (11th Cir. 2007). The district court appeared to believe that Lapham's pretext evidence that Walgreens' proffered reason should not be believed was insufficient unless she could also present independent evidence that Walgreen's real reason was retaliation.

As an initial matter, even if Lapham was required to present independent evidence to show both that Walgreens' proffered reason was false and that its real reason was discrimination, she did so. As shown, Lapham was not reprimanded, disciplined, or informed of the proffered reason before Shelton summarily fired her after she requested FMLA leave. That is evidence that Walgreens' proffered reason was false. Independent evidence—Shelton's April 5 call to HR that directly connected her complaints about Lapham's FMLA requests to her desire to fire Lapham—shows the real reason Shelton fired Lapham was in retaliation for her requests.

In any event, independent evidence of "the real reason" was not required once Lapham presented evidence the given reason was pretextual. This purported requirement, known as "pretext plus," is an outdated concept that has been rejected by the Supreme Court.

In *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511-512 (1993) the Supreme Court rejected such "pretext-plus" requirements, holding that evidence showing an employer's proffered explanation was false could also serve as sufficient evidence that the real reason for an adverse action was discrimination or retaliation. *Id.* at 511. Similarly, in *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000), the Supreme Court stated, "it suffices to say that, because a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of

35

liability, the Court of Appeals erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination." *Id.* at 149.

*Springer*, which the district court cited in support of its reconsideration ruling, does not hold differently. But *Springer* is inapt because in that case, (unlike here), the plaintiff had no evidence to suggest that racism had any part in the decision to fire her. 509 F.3d at 1347-49.

Here and in contrast, Lapham's evidence of pretext includes both evidence that Walgreens' stated reason for her termination should not be believed and that she was terminated for exercising her FMLA rights. That evidence was sufficient to present a jury question on causation under *St. Mary's*, *Reeves*, and *Munoz*.

### 5. The district court erred as a matter of law when it declined to consider any evidence of causation after April 5, 2017.

In its initial order on summary judgment, the district court ruled that it would not consider evidence of causation that occurred after April 5, 2017, but that the evidence of causation before that date was sufficient to deny summary judgment. (Doc.68, p.13&14). The evidence of what occurred after April 5, 2017, further bolstered Lapham's claims. But the district court found the April 5 call from Shelton to HR showed that Shelton began "contemplating" firing Lapham on April 5, 2017 for "performance related reasons." (Doc.68, p.13). The district court concluded that meant that evidence of causation that occurred after that date could not be used to

36

establish causation. (Doc. 68, p.13) citing *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006). This same reasoning carried over into the district court's later reconsideration order granting Walgreens' motion for summary judgment. This ruling was error.

As an initial matter, the district court overlooked that one of the reasons Shelton expressly provided in that same April 5 phone call as a basis for firing Lapham was *because of her intermittent FMLA requests.* (Doc.51-5, p.1). Because Shelton expressed that very retaliatory reason in the April 5 call, there is no basis for excluding additional evidence of causation that occurred after that date.

More to the point, neither *Drago* nor any other case supports the district court's decision to disregard probative evidence supporting Lapham's claims. In fact, this Court has held that even when there is evidence of a pending termination, that evidence is not dispositive to defeat causation.

In *Munoz,* this Circuit considered arguments by employers that they should be entitled to judgment as a matter of law when "a decision to terminate a plaintiff had been set in motion" *before* the employee engaged in protected activities. *See Munoz,* 981 F. 3d. 1265 (citing, *Hurlburt,* 439 F.3d 1286). This Court rejected that argument and pointed out that just because a decision to terminate was in motion before an FMLA request, that did not demonstrate that the decision to terminate was actually

37

made before the request for leave or that the termination would have been made regardless of the request. *Id.*

*Drago*, which was decided well before *Munoz*, is also factually inapt. In *Drago*, the plaintiff's FMLA claim failed because (a) it was based only on the theory he was demoted after he complained about an FMLA violation and (b) evidence showed his employer "contemplated demoting him before he ever complained." *Id*. at 453 F.3d at 1308. Here and in contrast, Lapham's claim is based on retaliation for her seeking FMLA leave and undisputed evidence showed that Walgreens never considered terminating her until Shelton's April 5 call *complaining about Lapham's FMLA leave.*

Because the district court established an arbitrary cut-off date on causation evidence, it did not take into account the evidence that: (a) on April 5, 2017, HR warned Shelton that she could not discipline Lapham for her FMLA requests or attendance; (b) on April 6, 2017, Shelton denied Lapham an FMLA day off to care for her son; (c) on April 7, 2017, Lapham complained about Shelton to HR and/or to Shelton directly and only after that Lapham complained did Shelton finally sign off on, and turn in, Lapham's FMLA paperwork to HR that she had in her possession for one week.

Finally, the district court's ruling led it to disregard record evidence in either of its orders that showed Lapham elevated her FMLA interference, harassment, and

38

discrimination complaints about Shelton to HR on April 10, 2017—just three days before Shelton fired her for "insubordination." HR told Lapham her complaints would be investigated, then called Shelton to instruct her to continue with Lapham's PIP. This evidence was relevant and probative of Lapham's claims and, together with the evidence of what occurred prior to April 5, presented a genuine issue of fact on causation. It was legal error to exclude it from consideration on summary judgment.

### B.    The district court erred when it found Ashley Williams' statement was a dispositive "intervening act."

In its order granting reconsideration, the district court concluded in a footnote that the April 12, 2017 statement of Ashley Williams "undermined" Lapham's causation argument. (Doc.88, p.7). It cited an unpublished decision, *Henderson v. FedEx Express,* 442 F. Appx. 502, 506 (11th Cir. 2011), for the premise that Williams' statement was an "intervening act" that would break any causal link between Lapham's protected conduct and Shelton's termination of her. (Doc.88, p.7). This was error.

First, it was error for the district court to adopt this argument when Walgreens only raised it for the first time in a footnote in a motion for reconsideration. (Doc.72, p.7, Fn. 2). Walgreens' approach to summary judgment in the district court—which involved new and developing arguments over a series of filings—left Lapham to

have to defend her claims as if playing a game of whack-a-mole. Walgreens did not argue that the Williams' statement as an "intervening act" that cut off causation in its motion for summary judgment or its reply to that motion. This *new* "intervening act" argument was tucked into a footnote in its reconsideration motion. It was not based on new evidence or any change in the law, so it could and should have been raised in the summary judgment motion. *See Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 957 (11th Cir. 2009) (a motion for reconsideration cannot be used to relitigate, raise argument or present evidence that could have been raised prior to the entry of judgment). It was error to permit Walgreens to raise arguments on reconsideration that could have been raised but were not in the motion itself.

Second, the district court erred when it ruled that Lapham's "failure to suggest that [Williams' Statement] were a cover for unlawful retaliation is fatal to her claim." Williams' statement was, at best, conflicting evidence that presented a genuine dispute of fact on causation. *Henderson* does not hold such evidence is dispositive. 442 Fed. App'x at 506-07. Nor could it be when, as here, there is a genuine dispute of fact over its veracity. During her deposition, Lapham was not questioned specifically about the facts of William's statement nor did Shelton or the Corporate Representative mention the Williams statement when asked about why Lapham was fired. She denied she failed to follow instructions or failed to finish the tasks given to her (unless Shelton changed her mind and asked her to do something else or

directed her not do to certain tasks).  As to the allegation that Lapham told others not to do tasks, Lapham disputed this and testified she was not permitted to supervise the tasks given to other employees because Shelton would not permit it. (Doc.51-9, p.1-4; Doc.34, p.53,54,60&97). Lapham also testified that she was unable to give employees tasks directly and Shelton would follow-up with employees. (Doc.34, p.25).

When Walgreens filed Williams' statement in support of its motion for summary judgment, Lapham filed an under-oath declaration denying the facts of Williams' statement.  (Doc.51-9).  She also averred that she helped work on the truck and finished her tasks on the April 12, 2017 day at issue in Williams' statement. (Id). Because Lapham disputed the facts in Williams' affidavit, "all reasonable doubts about the facts must be resolved in [Lapham's] favor" and summary judgment could not be entered against her based on Williams' statement.  *Lockheed-Martin* Corp., 644 F. 3d 1327 n. 23.  Also, when she was fired, Lapham asked Shelton if she was being fired because she complained about Shelton to HR on April 10, 2017. (Doc.34, p.51).  Shelton told Lapham she had made the decision to fire Lapham *before* her complaint on April 10—and so before any events on April 12. (Doc.34, p.51). Walgreens cannot rely on the Williams statement as a cause for termination when its agent, Shelton, said she decided to fire Lapham before the events alleged by Williams.  (Doc.34. p.51).

41

By way of further example, Shelton was asked during her deposition what final incident of insubordination led her to fire Lapham. Shelton did not identify the so-called "intervening act" of conduct alleged on April 12 by the Williams statement at all. Instead, she testified "it's not one specific incident." (Doc.38, p.55). She added that the final incident that led her to fire Lapham was a random weekend of unknown date when Shelton (and not an assistant manager, a key fact in the Williams statement) had written notes for Lapham to do and Lapham had told her she "did not know about them." (Doc. 38, p.55). Shelton rattled off a list of other unsubstantiated infractions she accused Lapham of, but that list did not include the alleged April 12 events. (Doc.38, p.55). And she acknowledged that she actually wrote out an extension of Lapham's PIP on April 12, 2017. (Doc.38, p.50&52). That PIP extension didn't mention this purported incident either. (Doc.38-1, p.54).[1]

Similarly, when Walgreens' corporate representative was deposed and asked why Lapham was fired, she too did not mention the Williams statement or any of the facts alleged in it. (Doc.49, p.20&21).

---

[1] Shelton's failure to identify the facts in the Williams statement as a basis for her decision to fire Lapham easily distinguishes this case from *Gogel,* 967 F. 3d 1121, which the district court cited for the proposition that an employer can terminate an employee if the employer has a "good faith" belief the employee engaged in misconduct. Neither Shelton nor any other Walgreens representative testified that they relied on or believed in good faith the content of the Williams' statement.

42

It should also be noted that Shelton was Williams' manager also. (Doc.40, p.1). Shelton only attempted to obtain Williams' statement *after* Lapham's April 10 complaint to HR about Shelton's retaliation. (Doc.34, p.91&78). It is not surprising that she decided to seek out a subordinate-employee's statement then as a pretext to her continued desire to fire Lapham for exercising her FMLA rights. An employer can be held liable if the improper animus of a supervisor is a proximate cause of a termination—even if the termination itself is conducted by one with no animus. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 420 (2011) (discussing this "cat's paw" theory of liability for an employer); *see also Blash v. City of Hawkinsville*, ____ Fed. Appx. ___ 2021 WL 1561347 (11th Cir. 2021) (also discussing cat's paw liability). That Williams may not have had any animus against Lapham does not mean that Shelton's decision to fire Lapham was not caused by Lapham's attempt to exercise her FMLA rights.

### C. The district court erred when it failed to apply the correct "motivating factor" standard of causation that applies to FMLA claims.

The district court's order on summary judgment concluded that Lapham had presented sufficient evidence to support her claim of FMLA retaliation. But in its reconsideration order, the district court concluded for the first time that the "but for" causation standard applied to Lapham's retaliation claim and that her evidence did not prove but-for causation. That was error, as discussed in this section. And even if

the but-for standard applied, as discussed in the next section the district court misapplied that standard by interpreting the but-for cause to also be the sole cause.

Other Circuit Courts of Appeal apply the "motivating factor" or "negative factor" causation standard to FMLA retaliation claims—not the but-for standard. They do so because that standard is consistent with the Department of Labor's Regulations on FMLA retaliation claims (29 C.F.R. § 825.220(c)) and the application of that causation standard by the Department is a reasonable interpretation of the FMLA.[2] *See Woods v. START*, 864 F.3d 158, 169 (2d Cir. 2017) (deferring to the Labor Department's regulation implementing a negative factor causation standard for FMLA retaliation claims."); *Egan v. Delaware River Auth.,* 851 F.3d 263, 272 (3d Cir. 2017) (reasoning that "under the regulation an employee who claims retaliation and seeks to proceed under a mixed-motive approach must show that his or her use of FMLA leave was 'a negative factor' in the employer's adverse employment action"); *Hunter v. Valley View Local Sch.,* 579 F.3d 688, 692-93 (6th Cir. 2009) (relying on the "negative factor" language of the Department of Labor's regulation to hold that mixed-motive framework applies to FMLA retaliation claims); *Bachelder v. Am. W. Airlines,* 259 F.3d 1112, 1125 (9th Cir. 2001)

---

[2] Courts seem to use these terms ("motivating factor" and "negative factor") interchangeably and as synonyms.

(employee need only prove by a preponderance of the evidence that taking FMLA-protected leave constituted a negative factor in decision to terminate).

29 C.F.R. § 825.220(c) states in relevant part:

> By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies.

*Id.*

Three additional Circuit Courts of Appeal have held that a motivating factor standard is the proper causation standard to be applied to an FMLA retaliation claim. *Richardson v. Monitronics Int'l, Inc.,* 434 F.3d 327, 333 (5th Cir. 2005) (motivating factor); *Ion v. Chevron, USA Inc.,* 731 F.3d 379, 390 (5th Cir. 2013) (applying a motivating factor causation standard but questioning its continued validity in an FMLA retaliation suit in light of *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167 (2009) and *Univ. of Tex. Southwestern Med. Ctr. v. Nassar,* 570 U.S. 338, 362 (2013)); *Goelzer v. Sheboygan Cty.,* 604 F.3d 987, 995 (7th Cir. 2010) (plaintiff may establish FMLA retaliation by showing protected conduct was substantial or motivating factor in employer's decision); *Malin v. Hospira, Inc.,* 762 F.3d 552, 562 n.3 (7th Cir. 2014) (applying motivating factor causation standard but questioning whether it is properly applied in an FMLA retaliation claim); *Smith v. Allen Health Sys.,* 302 F.3d 827, 833 n. 6 (8th Cir. 2002) (holding that but for causation is not required, but rather a showing that the retaliatory motive played a part in the adverse employment

45

action); *Hite v. Vermeer Mfg. Co.,* 446 F.3d 858, 865 (8th Cir. 2006) (affirming circuit court's application of motivating factor standard).

While the Eleventh Circuit has not expressly adopted the motivating factor standard, the Court has alluded to a motivating factor standard through language requiring a plaintiff to show that employer's actions to have been "motivated by an impermissible retaliatory or discriminatory animus." *See Martin,* 543 F.3d 1261 (unlike an interference claim, an employee bringing a retaliation claim faces the burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus); s*ee also Salem v. City of Port St. Lucie,* 788 Fed. App'x 692, 696 (11th Cir. 2019) (same); *See also Jones,* 854 F.3d 1261, 1270 (same); *Diamond v. Hospice of Florida Keys,* 677 Fed. Appx. 586 (11th Cir. 2017); *Batson,* 897 F.3d 1320 (11th Cir. 2018)(at summary judgment stage, plaintiff need only cast sufficient doubt that an employer's proffered legitimate reasons are not what actually *motivated* its conduct). The evidence discussed above was more than sufficient to meet the "motivating factor" causation standard that has been applied by the Department and other Circuit Courts of Appeal. This Court should apply the same standard and reverse and remand.

**D.    Even if the "but-for" standard of causation applied, the district court misapplied that standard.**

Even if the but-for standard applied to Lapham's FMLA claims, the district court still erred because it disregarded Supreme Court guidance regarding what the

46

"but for" requires. In *Burrage v. United States,* 571 U.S. 204 (2014), the Supreme Court explained that but-for causation requires a plaintiff to show that the alleged discrimination is just the "straw that broke the camel's back." *Id.* at 211. Expanding on this standard, the Court analogized, "[I]f poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived." *Id.*

Under the but-for standard articulated in *Burrage,* Lapham was not required to eliminate and discredit *every other* possible reason that could have contributed to her firing including the Williams statement. Rather, Lapham was only required to show that her requests for FMLA leave and complaints about FMLA and Shelton were the "straw that broke the camel's back" in Shelton's decision to fire her. The Supreme Court also recently cleared up confusion about what but-for causation requires in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). It explained that "but-for" is not a rigorous, sole-cause standard. Rather, as *Bostock* reinforced, "it can be a sweeping standard" that recognizes that an event may have multiple but-for causes. *Id*. at 1739. In *Bostock,* the Court explained: "[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Id.* The Court emphasized that an unlawful employment practice, "need not be the sole or primary cause of the employer's adverse employment

47

action." *Id.* at 1744. "A defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision." *Id.* at 1739. The Court noted that an employer can always point to some other, non-protected activity and insist it was the more important factor in the adverse employment outcome, but "it has no significance . . . if another factor . . . might also be at work, or even play a more important role in the employer's decision." *Id.* at 1744. The Court elaborated: "Often, events have multiple but for causes. So, for example, if a car accident occurred both because the defendant ran a red light and because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision." *Bostock,* 140 S. Ct. at 1739 (citing, *Burrage,* 571 U.S. at 211-12).

The district court got it right in its initial order on summary judgment. "A reasonable factfinder could infer from the above chain of events, combined with Shelton's statements to Employee Relations and their close temporal proximity to Plaintiff's termination, that Shelton was hostile to Plaintiff's attempts to exercise her FMLA rights." (Doc.68, p.22). As it initially acknowledged, Shelton's complaints, and Lapham's resulting termination "were more likely motivated by that hostility than Plaintiff's work performance." (Doc.68, p.22).

But in its reconsideration ruling, the district court granted summary judgment because it concluded Lapham had not proved that FMLA retaliation was not just the but-for cause of her firing but also the *sole* cause of her firing. It stated, "Plaintiff's

poor performance was an independent, non-retaliatory basis for her termination." In essence, the district court ruled that unless Lapham could rule out every other cause, she could not survive summary judgment. That is in conflict with the Supreme Court's admonition in *Bostock* that "but for" cause does not mean "the sole or primary cause." 140 S.Ct. at 1744. Even if Lapham engaged in poor work performance—which is itself a matter of dispute in this record—Lapham has provided evidence that Shelton was hostile to her attempts to take FMLA leave and that this factor was a cause of her firing. The but-for test is met.

Here, it is possible for Lapham's firing to have multiple "but-for" causes. Again, Shelton asked if she could fire Lapham on April 5, 2017 and said that one of her reasons for wanting to fire Lapham was ***because*** Lapham had requested intermittent FMLA. This, coupled with the other evidence in this case – FMLA interference, hostile comments, denials of days off, intentional delays and refusals, and firing on April 13, 2017 for "insubordination," satisfy the "but-for" standard because they would permit a reasonable jury to conclude that but for Lapham's FMLA requests, Shelton would not have fired her. Under *Bostock* and *Burrage,* Shelton's recorded hostility to Lapham's attempts to exercise her FMLA rights are a "but-for" cause of her firing and the district court erred when it concluded Lapham's evidence did not present a question of fact for the jury—it did.

## II. The district court erred in dismissing Lapham's FMLA interference claim because Lapham presented evidence from which a reasonable jury

**could find Walgreens interfered with her attempt to exercise her FMLA rights.**

### A.    Lapham presented evidence of interference that precluded summary judgment.

A benefit provided by the FMLA is the entitlement to a total of 12 workweeks of leave during any 12-month period to care for a child with a serious health condition. 29 U.S.C. § 2612(a)(1)(C). The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided" under the law.  29 U.S.C. § 2615(a)(1).  To prove FMLA interference, an employee must only demonstrate that she was denied a benefit to which she was entitled under the FMLA.  29 U.S.C. § 2615(a)(1); *Strickland*, 239 F.3d 1199. An employee need not allege nor prove that "his employer intended to deny the right; the employer's motives are irrelevant."  *Strickland,* 239 F. 3d at 1208.   Further, "causal nexus" is not an element of an interference claim.  *Spakes v. Broward County Sheriff's Office,* 631 F.3d 1307, 1310 (11th Cir. 2011).  It is not enough to show a technical violation of the FMLA; rather, the employee must demonstrate some hard from the alleged interference and that harm must be remedial by either damages or equitable relief.  *See Ramji v. Hospital Housekeeping, Systems,* LLC, 992 F. 3d 1233 (11th Cir. 2021) (*Citing, Evans v. Books-A-Million,* 762 F.3d 1288, 1296 (11th Cir. 2014).

50

The first consideration is whether Lapham was entitled to FMLA benefits and Lapham easily does so. *Ramji,* 992 F. Supp. at 1242. (Doc.51-1, p.1-5 & Doc.36, p.29). Indeed, prior to being transferred to work under Shelton, she had been granted intermittent FMLA leave by Walgreens every year since 2011. (Doc.34, p.42-43). As she had done in years prior, Lapham applied for intermittent FMLA on February 16, 2017, and that she provided a medical healthcare certification form relating to Jake's serious health conditions substantiating the need for leave in February 2017. (Doc.51-1, p.1-5).

Lapham also showed Shelton and Walgreens interfered with her attempts to exercise her FMLA rights. Shelton refused to sign off on her FMLA, and refused to process her request by forwarding it to HR -- twice. (Doc.34, p.40-42&50). Lapham complained, and Shelton finally sent in the request on February 27, 2017, but then Walgreens failed to designate or certify Lapham's FMLA leave requests, which are violations of law. See 29 C.F.R. § 835.300(c(1)(i), (iii and (iv); 29 C.F.R. § 825.301. Walgreens' argument that they needed more information—information that was easily gleaned from the documents in their possession—or that it sent notice to Lapham's wrong address—even when it had her proper one—is irrelevant and cannot defeat Lapham's interference claim. Even assuming Walgreens had the "best intentions," an employer's motives are irrelevant under the FMLA. *Ramji*, 992 F.3d at 1245 (citing, *Krutzig v. Pulte Home Corp.,* 602 F. 3d 1231, 1235 (11th Cir. 2010).

Throughout 2017, Walgreens did not give Lapham any notice whatsoever and so did not satisfy its notice obligations. *Ramji*, 992 F.3d at 1245; 29 C.F.R. § 825.300(b)(1) and(c) (1). As such, it denied Lapham a benefit to which she was entitled. *Id.*

Lapham filled out another FMLA request on March 31, 2017, and again, Shelton refused to sign it and process it for another 7 days. (Doc.34, p.66-67). Then, Shelton was openly hostile to Lapham's pending FMLA requests, telling her to "make other accommodations" for her son; denying her days off between March31, 2017 and April 6, 2017; complaining about her FMLA requests to HR (twice); and then summarily firing her while her FMLA requests to HR were pending. (Doc.34, p.69&94; Doc.51-9 & Doc.34-3, p.3).

Finally, Walgreens' violations prejudiced Lapham in several ways. First, had Walgreens correctly provided Lapham with a timely notice of rights and responsibilities, Lapham could have provided any needed information, and gotten her FMLA approved earlier in March 2017. That may have avoided both Shelton's refusal to provide her days off to care for Jake and avoided her later firing in April of 2017 due to Shelton's continued and growing FMLA animus. Had Lapham's FMLA request been approved by Walgreens earlier and on time, Shelton would not have had the clear bravado to be continuously hostile and deny Lapham's FMLA requests. Walgreens' failure to follow the law resulted in a delay that Shelton used to her own advantage to both deny Lapham's FMLA days-off requests and then fire

her while her FMLA requests were pending with HR. Walgreens should not be able to benefit from its complete and utter failure to comply with the FMLA and the required notice requirements—particularly when evidence showed it had the necessary information and ability to do so. *See Ramji*, 992 F. 3d at 1247.

A fact-finder could reasonably conclude that Lapham was prejudiced when she was denied days off to care for her son and fired while her FMLA leave requests were pending, resulting in financial harm. In *Pereda v. Brookdale Senior Living Cmtys., Inc.,* 666 F. 3d 1269, 1276 (11th Cir. 2012), this Circuit recognized that terminating an employee in the process of exercising her FMLA rights was a form of interference. *Id.* Also, because her FMLA was not granted (and she was fired instead), she lost insurance benefits, wages, the right to promotions, bonuses, and other economic renumeration. This easily suffices to as evidence from which a reasonable jury could conclude there was prejudice to Lapham as well as the other elements of an interference claim. *Batson,* 897 F.3d 1320 (reversing summary judgment on FMLA interference claim).

**B.** **The district court erred when it ruled that Lapham's FMLA interference claim hinged on her ability to prove retaliation.**

In its reconsideration order, the district court ruled that Lapham's FMLA interference claim "hinges on her retaliation claim" and that the only prejudice Lapham pointed to was her termination. The district court also concluded: "Because [Lapham] failed to present evidence **disproving [**Walgreens'] assertion she was

53

terminated for poor performance, her termination cannot supply the prejudice necessary for an actionable FMLA interference claim."(emphasis added).  These rulings were error for at least two reasons.

First, the district court's ruling improperly analyzes Lapham's interference claim as if it were the same as or dependent on her termination claim.  In dismissing Lapham's interference claim, the district court cited two opinions that are easily distinguished from this case.  First, the district court cited an unpublished opinion, *Gamba v. City of Sunrise,* 157 Fed. App. 112 (11th Cir. 2005), which is not an FMLA interference case but an FMLA retaliation case in which the plaintiff—unlike Lapham—presented no evidence of causation. Second, the district court cited *Krutzig*, a factually dissimilar case in which there was unrebutted evidence that the decision-maker (unlike Shelton here) was not aware of a request for FMLA at the time he decided to fire the plaintiff.

This Circuit recognizes that the FMLA creates two types of claims – (1) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in a protected activity protected by the FMLA, and (2) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the FMLA.  *See Herren v. La Petite Academy, Inc.,* 820 Fed. Appx. 900 (11th Cir. 2020)(citing, *Strickland,* 239 F. 3d 1199, at 1206.  As to retaliation claims, retaliatory motive is an element of an

54

FMLA retaliation claim, and, absent direct evidence of an employer's motive, this Circuit applies the *McDonnell-Douglas* burden-shifting framework to FMLA retaliation claims. *Id.* As to interference claims, though, a plaintiff is not required to establish the employer's intent, but instead need only establish that he was entitled to but denied the right to FMLA leave. *Strickland,* 239 F.3d at 1208. As shown, Lapham presented that evidence and was indisputably prejudiced when she was denied the FMLA leave to which she was entitled.

Recently in *Herren*, this Court reversed and remanded a district court's order granting summary judgment where, exactly like here, the district court placed the burden of persuasion on the plaintiff and based its ruling on a retaliation analysis rather than an interference analysis. *Herren,* 820 Fed. Appx. 90. Exactly like in *Herren,* the district court concluded that Lapham's interference claim "hinged" on her retaliation claims when in fact her interference claims did not depend on or require her to prove retaliation. Like *Herren*, this case should be reversed, and remanded.

### III.    The district court erred when it dismissed Lapham's Florida Whistle-Blower Act (FWA) claims based on her complaints of FMLA interference.

Due to similarities in application, this Circuit has long recognized that retaliation claims brought under the FWA are analyzed in the same manner as Title VII retaliation claims. *See e.g., Sierminski v. Transouth Fin. Corp.,* 216 F. 3d 945,

950-51 (11th Cir. 2000); *Aery v. Wallace Lincoln-Mercury,* LLC, 118 So. 3d 904 (4th DCA 2013).

For the same reasons that Lapham's FMLA retaliation claims should not have been dismissed, her claims that Walgreens violated the FWA by terminating her after she reported Shelton was violating the FMLA should also not have been dismissed. Using the familiar *McDonnell Douglas* framework, Lapham established a prima facie case that she was terminated for reporting the FMLA violations and that Walgreens' proffered alternative reason for her termination was pretext. Additionally, under the holding of *Bostock* and *Burrage*, Lapham has shown that she can establish that her reports of FMLA interference (which are actual violations of laws) were both a "but for" cause of her firing and motivated her firing. For the same reasons Lapham's FMLA retaliation claims should not have been dismissed, Lapham's FWA claims should not have been dismissed either.

## CONCLUSION

Doris Lapham was an 11-year veteran of Walgreens. She routinely relied on intermittent FMLA leave to care for her disabled son. Lapham's FMLA only became a problem in 2017, when she transferred to a new Store Manager, Lisa Shelton, who was hostile to Lapham's attempts to take FMLA and her FMLA protected activities. Frustrated with Lapham's FMLA requests, paperwork, and requests for days off to care for her son, 7 days before her firing, Shelton openly

56

complained about Lapham's FMLA requests and asked if she could fire her. Lapham continued to complain and request days off to care for her disabled son, and Shelton had enough – firing her under the guise of "insubordination" three days after Lapham elevated her complaints to HR.

This and other evidence supported Lapham's claims for FMLA retaliation, FMLA interference, and FWA violations. The district court's order granting Walgreens' motion for reconsideration and its resulting judgment should be reversed, and the case remanded for further proceedings.

Respectfully Submitted,

/s/ *Kelly H. Chanfrau*
Kelly H. Chanfrau, B.C.S.
Florida Bar No. 560111
CHANFRAU & CHANFRAU, P.L.
701 N. Peninsula Drive
Daytona Beach, FL 32118
P: 386-258-7313
F: 386-238-1464
E-mail: Kelly@chanfraulaw.com
Secondary: Melanie@chanfraulaw.com
Secondary: Dahiana@chanfraulaw.com
Counsel for Plaintiff/Appellant

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify this brief complies with the type-volume limitation set forth in Fed. R. App. Proc. Rule 32(a)(7)(B)(1), in that, excluding parts of the document exempted by Fed. R. App. Proc., 32(f), this brief contains 12,985 words.

I further certify this brief complies with the typeface requirements of Fed. R. Civ. App. Proc., Rule 32(a)(5) and the type-style requirements of Fed. R. App. Proc., Rule 32(a)(6), in that this document has been prepared using word in a 14-point type in Times New Roman.

/s/ *Kelly H. Chanfrau*
Kelly H. Chanfrau, B.C.S.

58

## <u>**CERTIFICATE OF SERVICE**</u>

I certify that on the <u>7th</u>, day of June 2021, I filed the foregoing with the Clerk of Court using the Electronic Filing System which will send a Notice of Docket Activity to all counsel of record.

Respectfully submitted,

/s/ *Kelly H. Chanfrau*
Kelly H. Chanfrau, B.C.S.
Florida Bar No. 560111
CHANFRAU & CHANFRAU, P.L.
701 N. Peninsula Drive
Daytona Beach, FL 32118
P: 386-258-7313
F: 386-238-1464
E-mail: Kelly@chanfraulaw.com
Secondary: Melanie@chanfraulaw.com
Secondary: Dahiana@chanfraulaw.com
Counsel for Plaintiff/Appellant

59