

**GRAY | ROBINSON**
ATTORNEYS AT LAW

401 East Jackson Street
Suite 2700
Tampa, Florida 33602
tel 813-273-5000
fax 813-273-5145
gray-robinson.com

Boca Raton
Fort Lauderdale
Fort Myers
Gainesville
Jacksonville
Key West
Lakeland
Melbourne
Miami
Naples
Orlando
Tallahassee
Tampa
Washington, DC
West Palm Beach

Gregory A. Hearing
Shareholder
813.273.5000
Gregory.Hearing@gray-robinson.com

July 22, 2022

**VIA ELECTRONIC FILING**
David J. Smith, Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St. N.W.
Atlanta, Georgia 30303

Attention: Valerie L. Geddis

    Re:    **Doris Lapham v. Walgreen Co.**
            **Appeal No.: 21-10491-J**
            **District Court Docket No. 6:19-cv-579-Orl-40DCI**

Dear Sir/Madam:

    In compliance with Federal Rule of Appellate Procedure 28(j), I am writing to advise the circuit clerk of two recent opinions, which Appellee Walgreen Co. ("Appellee") submits as supplemental authority in support of its Answer Brief and for purposes of oral argument.

    Fonte v. Mem'l Health Sys., No. 20-13240, 2021 WL 5368096 (11th Cir. Nov. 18, 2021) (per curiam) (unpublished), distinguishes between single-motive and mixed-motive claims, stating that the Court has "never held that [the mixed-motive framework] applies to FMLA retaliation claims . . . ." 2021 WL 5368096, at *3. Fonte further states that McDonnell Douglas is "incongruent with mixed-motive claims, which allege that an employer was motivated by both non-discriminatory and discriminatory reasons." Id. (citing Quigg v. Thomas County Sch. Dist., 814 F.3d 1227, 1236 (11th Cir. 2016)). Fonte additionally applied Quigg v. Thomas County Sch. Dist., 814 F.3d 1227, 1236 (11th Cir. 2016), to FMLA retaliation claims and restricted a plaintiff to a single-motive claim where the plaintiff "did not allege a mixed-motive claim before the district court" and relied on pretext arguments, which are "not relevant to a mixed-motive claim." Id. Fonte supports Appellee's arguments regarding Appellant's burden at the pretext stage of McDonnell Douglas, as well as the scope of Plaintiff's claims as framed by her submissions to the district court. (Answer Brief at 23-24, 44-47). It also contradicts Appellant's argument regarding those issues. (Reply Brief at 3-4, 17).

USCA11 Case: 21-10491    Document: 54    Date Filed: 07/22/2022    Page: 1 of 13

David J. Smith, Clerk of Court
July 22, 2022
Page 2 of 2

Ramos v. Delphi Behavioral Health Group, LLC, No. 21-11218, 2022 WL 1415856 (11th Cir. May 4, 2022) (per curiam) (unpublished), applies a case cited by Appellee, Matamoros v. Broward Sheriff's Office, 2 F.4th 1329, 1337 (11th Cir. 2021), stating that, at the pretext stage, "[t]he employee must show the [employer's] reason was actually false and that discrimination or retaliation was the real reason behind the challenged action." 2022 WL 1415856, at *4. Ramos supports Appellant's arguments regarding Appellant's burden to prove pretext for retaliation in this case. (Answer Brief at 23-24; Reply Brief at 3-4).

In compliance with the Court's Internal Operating Procedures, copies of the above-referenced opinions are appended to this correspondence.

With kind regards, I am,

Very truly yours,

Gregory A. Hearing

cc: Kelly H. Chanfrau, Esq.
Brandon K. Breslow, Esq.
Kristin A. Norse, Esq.
Stuart C. Markman, Esq.

2021 WL 5368096
United States Court of Appeals, Eleventh Circuit.

Dr. Nelayda FONTE, an individual, Plaintiff-Appellant,
v.
LEE MEMORIAL HEALTH SYSTEM, Venkat Prasad, Dr., Defendants-Appellees.

No. 20-13240
|
Non-Argument Calendar
|
Filed: 11/18/2021

Appeal from the United States District Court for the Middle District of Florida, D.C. Docket No. 2:19-cv-00054-SPC-NPM

**Attorneys and Law Firms**

Benjamin Harris Yormak, Yormak Employment & Disability Law, Bonita Springs, FL, for Plaintiff-Appellant.

Angelique Groza Lyons, Constangy Brooks Smith & Prophete, LLP, Tampa, FL, for Defendants-Appellees.

Before Jill Pryor, Lagoa, and Brasher, Circuit Judges.

**Opinion**

PER CURIAM:

*1 Dr. Nelayda Fonte alleged that her employer, Lee Memorial Health System, and her supervisor, Dr. Venkat Prasad, fired her in **retaliation** for exercising her rights under the Family and Medical Leave Act ("**FMLA**"). Lee Memorial Health System maintained that it fired her because she violated its trauma patient transfer policy after she had already received a final warning. The district court dismissed the suit against Prasad for lack of subject matter jurisdiction and granted Lee Memorial Health System summary judgment, concluding that Fonte did not prove that her FMLA leave, rather than her violation of policy, caused her employer to terminate her. After careful review, we agree and affirm the district court's grant of summary judgment to Lee Memorial Health System and dismissal of Prasad.

**I. BACKGROUND**

We write for the parties and recount only the facts necessary to explain our decision.[1] Fonte worked for Lee Memorial Health System as a trauma surgeon for over 20 years and held several high-level positions, including chief of staff. The state of Florida created Lee Memorial Hospital and Lee Memorial Health System (collectively, "Lee Health") as a public health care system. Lee Health is a trauma facility that routinely receives transfers of trauma patients from other hospitals. Federal and state law require Lee Health to accept all trauma patient transfers that it has the capacity (i.e., available beds) and capability (i.e., a trauma department) to treat. Lee Health had its own internal policy requiring the same.

Fonte was on call the night of March 3, 2018, when a physician from another hospital called and requested to transfer a trauma patient to Lee Memorial Hospital and Fonte's care. She refused the transfer, telling the physician that the surgery was simple enough that he should be able to do it himself, despite his protestations that he could not. Lee Health's risk management department opened an investigation and, after interviewing Fonte, determined that she had violated Lee Health's internal transfer policies.

Lee Health informed the Florida Agency for Health Care Administration ("AHCA"), which began its own investigation into the potential violation of the federal law, the Emergency Medical Treatment and Labor Act ("EMTALA"), that requires trauma facilities to accept transfers. AHCA concluded that Lee Health had been obligated to accept the transfer and that Fonte violated EMTALA when she refused to do so. AHCA worked with Lee Health to prepare an action plan to ensure that the hospital complied with EMTALA in the future. The plan included weekly audits of transfer requests, in-person training for all trauma surgeons, and educational counseling for Fonte. At the training, Lee Health clarified the law and its own internal policy, telling Fonte and the other trauma surgeons that the transferring physician was the one who decided whether the patient should come to Lee Health; the Lee Health physician was required to accept the transfer and the transferring physician's medical judgment that a transfer was warranted.

*2 Fonte faced other consequences stemming from the March call. The internal investigation determined that she had committed gross misconduct: "[c]onduct detrimental to Lee Health['s] image" and "conduct which disturbs a patient."

Fonte v. Lee Memorial Health System, Not Reported in Fed. Rptr. (2021)
171 Lab.Cas. P 36,898

USCA11 Case: 21-10491    Document: 54    Date Filed: 07/22/2022    Page: 4 of 13

Doc. 38-2 at 23–24.[2] Under Lee Health's Corrective Action Process, "[e]mployment is subject to termination when an employee's conduct ... has not improved after adequate counseling or when the employee commits an offense of gross misconduct which is so serious that progression through the formal levels of corrective action is not appropriate." *Id.* at 23. Corrective action under this process could take the form of a Final Warning, available in "limited situations where the nature of an employee's offense may warrant a one-time final warning instead of termination." *Id.* at 22.

In April, Lee Health issued Fonte a Final Warning, her first disciplinary action in her Lee Health career. The Final Warning stated, "Should Dr. Fonte persist in these behaviors by repeating the same or similar offenses her employment will be terminated." *Id.* at 27. When Dr. Venkat Prasad, the hospital's Chief Medical Officer, gave Fonte a written copy of the Final Warning, he told her that she had to accept all transfers into Lee Health's trauma service, even if she disagreed with the transferring physician's medical judgment, or else she would be "immediately terminated." *Id.* at 4–5.

But on November 12, Fonte refused another transfer of a trauma patient. The transferring physician wanted to send the five-year-old patient to Lee Health—the closest trauma facility—to stabilize him before transferring him again to a pediatric facility that was significantly farther away. Fonte told the transferring physician that Lee Health lacked pediatric services and could not treat the child. Fonte persuaded the transferring physician to transfer the child directly to the pediatric facility, even though the other physician was concerned that the child was not stable enough to make it there. Tragically, the child died of his injuries before any transfer took place.

Lee Health learned of Fonte's refusal the next day and began investigating the incident. The risk management department reached out to Fonte on November 15 to schedule an interview. That evening, Fonte asked a fellow surgeon to recommend "headhunters"—recruiters who find surgeons temporary assignments. Doc. 38-5 at 40, 88. With the risk management meeting looming, she thought that "it would probably be a good idea to know what else is out there." *Id.* at 40. At the investigatory interview on November 16, Fonte told risk management that she was right to refuse the patient transfer because the pediatric facility was the most appropriate facility for the patient.

On November 18, Fonte sought medical care for anxiety that she experienced as high blood pressure, chest pressure, and shortness of breath. She spent the night in the hospital's intensive care unit. She notified Lee Health and requested leave under the FMLA.[3] Lee Health granted her leave, and Fonte's colleagues were supportive of her taking the time off to recover. She sought psychiatric help and was diagnosed with post-traumatic stress disorder, anxiety, and depression related to a sexual assault that she had suffered at medical school.

The investigation continued while she recovered. Lee Health concluded that it had had the capacity and capability to treat the young patient. Thus, Fonte should have accepted the transfer, and her refusal to do so "constituted a clear violation of Lee Health's policies and a repeat offense of the very conduct addressed by her one-time Final Warning," which had warned her that she would be terminated if she again refused a transfer like she had done in March. Doc. 38-2 at 6. On November 19, Prasad and other administrators held a conference call to discuss the transfer refusal. A month later, they held another call where they discussed terminating Fonte's employment.

*\*3* In late December, Fonte's personal physician cleared her to return to work in January but stipulated that, for two months, she should work shorter shifts. On January 4, Fonte notified Lee Health and requested the accommodation. An hour later, Lee Health asked her to meet with Prasad the morning she returned to work. At that meeting, Prasad thanked Fonte for her years of service and handed her a letter terminating her employment. The termination letter stated that she was terminated for "no cause" and provided her with 13 weeks of severance pay. Doc. 38-5 at 96.

Fonte filed this suit against Lee Health and Prasad, alleging that they had interfered with her **FMLA** rights and had terminated her in **retaliation** for exercising her **FMLA** rights. The district court dismissed Prasad as a defendant, determining that the suit could not proceed against him because, as a public official, he could not be held individually liable under the FMLA. Lee Health moved for summary judgment, which the district court granted because Fonte failed to argue her interference claim and failed to make out a prima facie case of retaliation. Fonte now appeals.

## II. STANDARD OF REVIEW

We review *de novo* a district court's order granting a motion for summary judgment, viewing the facts and all reasonable inferences drawn therefrom in favor of the nonmoving party. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291–92 (11th Cir. 2012). Summary judgment is appropriate when a movant shows that there is "no genuine dispute as to any material fact," such that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). If the nonmovant's evidence is "not significantly probative," summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). A genuine dispute of a material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252.

We review dismissals for lack of subject matter jurisdiction *de novo*. *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 891 (11th Cir. 2013).

## III. DISCUSSION

The FMLA allows an eligible employee to take up to 12 work weeks of unpaid leave annually to recover from "a serious health condition that makes the employee unable to perform the functions" of her position. 29 U.S.C. § 2612(a)(1)(D); *Hurlbert v. St. Mary's Health Care Sys.*, 439 F.3d 1286, 1293 (11th Cir. 2006). The Act creates a private right of action for two types of claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, ... and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001) (citing 29 U.S.C. § 2615(a)).

Here, we address only Fonte's retaliation claim.[4] She argues that the district court erred in granting Lee Health summary judgment on retaliation. She asserts that the district court should have analyzed her retaliation claim as a mixed-motive claim but instead analyzed it as a single-motive claim. She also argues that the court erroneously dismissed her claim against Prasad in his individual capacity. We address these arguments in turn.

### A. The Single-Motive Framework Applies.

*4 Fonte contends that the district court erroneously applied a single-motive framework to her retaliation claim instead of a mixed-motive framework. We agree with the district court that the single-motive framework applies for two reasons. First, we have never held that a plaintiff can bring a mixed-motive claim in an **FMLA retaliation** case. Second, Fonte did not plead, prove, or argue that Lee Health had mixed motives for terminating her. We start by explaining the difference between the mixed-motive and single-motive frameworks and then discuss why the mixed-motive framework does not apply here.

We analyze **FMLA retaliation** claims based on circumstantial evidence using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a Title VII employment discrimination case. *Strickland*, 239 F.3d at 1207. So, we look to Title VII jurisprudence for direction on the appropriate FMLA analysis. There are two different legal theories available to a plaintiff in a Title VII case: the single-motive theory and the mixed-motive theory. *See Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016).

A plaintiff who asserts a single-motive discrimination claim can survive a motion for summary judgment by showing that illegal bias was the *only* reason for the adverse employment action. *See* 42 U.S.C. § 2000e-2(a); *see Quigg*, 814 F.3d at 1235. In reviewing single-motive claims, courts often use the *McDonnell Douglas* framework. *See, e.g., Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). Under the *McDonnell Douglas* burden-shifting framework, "the plaintiff must first create an inference of discrimination through [her] prima facie case." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). "Once the plaintiff has made out the elements of the prima facie case, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action." *Id.* If the employer meets this burden, the plaintiff has the opportunity to show that the employer's reasons were pretextual. *Id.* at 768.

Alternatively, a plaintiff can assert a mixed-motive discrimination claim and survive summary judgment by showing that, although an employer was motivated by more than one reason to take a particular action, a discriminatory reason was "*a* motivating factor" for the defendant's adverse

Fonte v. Lee Memorial Health System, Not Reported in Fed. Rptr. (2021)
171 Lab.Cas. P 36,898

Case 2:19-cv-00451 Document 64 Date Filed: 07/22/2022 Page: 6 of 13

employment action. *Quigg*, 814 F.3d at 1239 (internal quotation marks omitted); *see* 42 U.S.C. § 2000e-2(m). In *Quigg*, we held that the *McDonnell Douglas* framework was "inappropriate for evaluating mixed-motive claims" at summary judgment. *Quigg*, 814 F.3d at 1237. *McDonnell Douglas* requires a plaintiff to prove that the "true reason" for an adverse action was discriminatory "by showing the employer's purported legitimate reasons *never* motivated" its employment decision. *Id.* at 1237–38 (internal quotation marks omitted). Thus, we reasoned that *McDonnell Douglas* was incongruent with mixed-motive claims, which allege that an employer was motivated by both non-discriminatory and discriminatory reasons. *Id.* at 1238. Though available for Title VII discrimination claims, the mixed-motive framework does not apply to Title VII retaliation claims. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). We have never held that it applies to **FMLA retaliation** claims and decline to do so today.

Even if the mixed-motive framework were appropriate in the context of an **FMLA retaliation** claim, Fonte's claim would fail because she did not allege a mixed-motive claim before the district court. She did not plead in her complaint that Lee Health had mixed motives in terminating her. She did use the phrase "motivating factor" in passing in her summary judgment briefing, Doc. 44 at 17, 18, 31, but this mere mention was insufficient. To withstand summary judgment, she needed to submit "evidence sufficient to convince a jury" that she was terminated for both legitimate and illegitimate reasons, with the illegitimate reason being a motivating factor in the termination decision. *See Quigg*, 814 F.3d at 1239 (internal quotation marks omitted). She only alluded to that possibility, stating that "there could have been a number of factors—including the FMLA—that led to her termination." Doc. 44 at 16. But she did not elaborate on these factors or use them to support a legal argument.

*5 Instead, her summary judgment brief almost exclusively argued that Lee Health's given reasons for terminating her were pretextual and illegitimate. Pretext is not relevant to a mixed-motive claim. *Quigg*, 814 F.3d at 1240. Her focus on pretext comported with the third step of *McDonnell Douglas* and indicated that she was advancing a single-motive claim. We agree with the district court that, under the circumstances of this case, Fonte did not raise a mixed-motive claim. Thus, the district court correctly analyzed her claim under the single-motive *McDonnell Douglas* framework.

On appeal, Fonte argues that the district court should have applied the mixed-motive framework because Lee Health offered a legitimate, non-discriminatory reason for terminating her. Therefore, she needed only to point to "some evidence from which the factfinder may infer that the protected activity played some part in the termination decision." Appellant's Br. at 20. Not so. If this were true, every retaliation claim would become a mixed-motive claim because the employer must always offer a non-retaliatory reason for its adverse actions. A single-motive claim does not become a mixed-motive claim simply because an employer satisfies its burden of proof.

We proceed to apply a single-motive framework to Fonte's retaliation claim.

### B. Fonte's Retaliation Claim Fails Under the Single-Motive Framework.

Fonte has not made out a prima facie case of **retaliation** under *McDonnell Douglas*, failing to prove that taking **FMLA** leave caused Lee Health to terminate her employment. To succeed on her claim, she was required to demonstrate that Lee Health "intentionally discriminated against [her] in the form of an adverse employment action for having exercised an FMLA right." *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017) (internal quotation marks omitted). Because she presents only circumstantial evidence, we analyze her claim under the *McDonnell Douglas* framework, which first requires the employee to establish a prima facie case by showing that: (1) she engaged in statutorily protected activity, (2) she experienced an adverse employment decision, and (3) the decision was causally related to the protected activity. *Id.* at 1271; *Hurlbert*, 439 F.3d at 1297.

Both parties agree that Fonte satisfies the first two elements of the prima facie case. She engaged in statutorily protected activity by requesting and taking FMLA leave, and she experienced an adverse employment action when Lee Health terminated her employment. The parties dispute whether she satisfied the third element, showing that there was a causal connection between her FMLA leave and her termination, however. We hold that Fonte failed to show a causal connection. Lee Health contemplated terminating her before she requested FMLA leave, so even the closest temporal proximity is insufficient to prove causation.

To establish causation, an employee must show that the decisionmaker was aware of the protected conduct, and that

Fonte v. Lee Memorial Health System, Not Reported in Fed. Rptr. (2021)
171 Lab.Cas. P 36,898

Case 2:19-cv-00491    Document 64    Date Filed: 07/22/2022    Page: 7 of 13

"the protected activity and the adverse actions were not wholly unrelated." *Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal quotation marks omitted). Generally, "[c]lose temporal proximity between protected conduct and an adverse employment action" is sufficient to show causation. *Hurlbert*, 439 F.3d at 1298. But an exception applies when the employer contemplates taking the adverse employment action before the employee engages in protected activity. *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006). In that situation, temporal proximity between the adverse action and the protected activity is insufficient to show causation. *Id.*

**\*6** Fonte argues that the close temporal proximity between her exercising her FMLA rights and her termination is sufficient to establish causation. We disagree. Mere temporal proximity is insufficient to demonstrate causation because the undisputed evidence in this case shows that Lee Health contemplated terminating Fonte before she took FMLA leave. Because Fonte does not offer any additional evidence of causation, we conclude that she failed to make out a prima facie case of **FMLA retaliation**.

Fonte first refused a transfer from an outside facility in March, several months before she requested leave. Lee Health's investigation determined that "the appropriate discipline for Dr. Fonte's gross misconduct was either a final written warning or termination." Doc. 38-2 at 4. Lee Health decided not to terminate her in March because of her "years of service" and its belief that she "would correct her behavior and not commit a similar violation in the future." *Id.* To this end, it provided her with group training and individual counseling to help her avoid running afoul of its transfer policy a second time. Both Prasad and the Final Warning, issued in April, warned her that she would be terminated if she did. Thus, the undisputed evidence shows that Lee Health contemplated terminating Fonte's employment in March and April, well before she requested FMLA leave in November.

When Fonte refused another transfer in November, she violated the terms of the Final Warning by committing the same gross misconduct she had been counseled to avoid. She was subject to termination then—the Final Warning was a "one-time only lesser discipline." *Id.* at 6. Fonte already knew that Lee Health had come close to firing her because of the March call. When Lee Health scheduled an interview with Fonte to investigate the November call, she texted a friend to ask about potentially finding other employment with "headhunters" because "[she]'d be dumb not to be concerned" about her job. Doc. 38-5 at 40.

Fonte requested FMLA leave on November 18, knowing that she was on thin ice. On November 19, Prasad and other Lee Health administrators held a conference call to discuss the investigation into her transfer refusal. At another conference call in December, the same administrators discussed Fonte's "termination based on her actions while she was on a final warning." Doc. 44-7 at 4. In early January, Fonte returned to work, starting her day with a meeting with Prasad. There, Prasad terminated her employment. Fonte was fired the day after her FMLA leave ended, before she had a chance to resume working.

For causation purposes we measure temporal proximity "from the last day of an employee's FMLA leave until the adverse employment action at issue occurs." *Gulf Coast*, 854 F.3d at 1272. Measuring the scant hours between the last day of her FMLA leave and her termination shows us "very close" temporal proximity that, usually, is sufficient on its own to establish causation. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). But Fonte's case falls under an exception to this rule. Given the undisputed evidence that her termination was under way before she invoked her right to FMLA leave, under our precedent the close temporal proximity between the end of her leave and her termination "does not suffice to show causation." *Drago*, 453 F.3d at 1308. Lee Health contemplated terminating Fonte in March because of her first refusal. It was in the process of investigating her November refusal when she requested FMLA leave. That investigation led to her termination.

**\*7** In terminating Fonte, Lee Health "proceed[ed] along lines previously contemplated, though not yet definitively determined." *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001). Thus, the temporal proximity between her return from leave and her termination is "no evidence whatever of causality." *See id.*; *see also Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1270 (11th Cir. 2010) ("[A]nti-retaliation provisions do not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a discrimination complaint."). Because Lee Health considered terminating her in March—before she engaged in protected activity—even the very close temporal proximity between her FMLA leave and her termination is insufficient to show causation. *See Drago*, 453 F.3d at 1308.

Fonte offered no other evidence that she was terminated because she exercised her FMLA rights. In her deposition, Fonte conceded that no one told her that she was being terminated because of her FMLA leave, or even mentioned the leave in relation to her termination. Rather, according to Fonte, no one at Lee Health said anything negative about her FMLA leave request—not the office manager, not the trauma director, and not Prasad. Nor did anyone try to talk her out of taking FMLA leave. Fonte presented no evidence showing that Lee Health administrators discussed her FMLA leave at either conference call. And she presented no evidence that contradicted Prasad's sworn statement that her FMLA leave "was not a factor in the decision" to terminate her employment. Doc. 38-2 at 6. Instead, the evidence supports Lee Health's contention that it terminated Fonte because she twice violated its internal transfer policy. Fonte has not met her burden of raising a genuine issue of material fact as to whether her taking of FMLA leave and her termination are causally related. *See Gulf Coast*, 854 F.3d at 1271.[5]

Because we hold that she has not established a prima facie case of retaliation, we do not proceed to the next steps of the burden-shifting *McDonnell Douglas* framework. We affirm the judgment in favor of Lee Health.

**C. The Suit Against Prasad Was Properly Dismissed.**
Fonte argues that the district court erred when it dismissed her suit against Prasad in his individual capacity as her employer. She acknowledges that dismissal is the result required under our precedent in *Wascura v. Carver*, 169 F.3d 683 (11th Cir. 1999), but urges us to overrule that case. As a panel we cannot do so.

Lee Health, organized under Florida state law, is a public agency; Prasad, an executive in charge of the public agency, is a public official. The parties agree on those facts. They also agree that *Wascura* applies here. In *Wascura*, we applied our reasoning from a Fair Labor Standards Act case to the FMLA context and held that "a public official sued in his individual capacity is not an 'employer' subject to individual liability" under the FMLA. *Wascura*, 169 F.3d at 686. Fonte cites our sister circuits' decisions that reach the opposite result, but our prior panel precedent rule prevents us from overruling *Wascura*. *United States v. Steele*, 147 F.3d 1316, 1317–18 (11th Cir. 1998) (en banc). "We are bound to follow a prior panel or en banc holding, except where that holding has been overruled or undermined to the point of abrogation by a subsequent en banc or Supreme Court decision." *Chambers v. Thompson*, 150 F.3d 1324, 1326 (11th Cir. 1998). Fonte's claim against Prasad was squarely within *Wascura*'s holding; thus, we conclude that the district court properly dismissed him as a defendant for lack of subject matter jurisdiction.

**IV. CONCLUSION**

*8 For the foregoing reasons, we affirm.

**AFFIRMED.**

**All Citations**

Not Reported in Fed. Rptr., 2021 WL 5368096, 171 Lab.Cas. P 36,898

Footnotes

1 Because we are reviewing the district court's order on a motion for summary judgment, we recount all facts in the light most favorable to Fonte, the nonmoving party. *See infra* Part II.

2 "Doc." numbers refer to district court docket entries.

3 The record is unclear as to the exact date Fonte requested FMLA leave. Her briefs in the district court said November 18; in her deposition, she said November 20. Like the district court, we use the earlier date because it is more favorable to her case.

4 The district court briefly addressed Fonte's interference claim, even though it concluded that she failed to argue it in her summary judgment briefing. We agree with the district court's assessment that the claim was abandoned at summary judgment. But even if Fonte did not abandon her interference claim before the district court, she has abandoned it on appeal. In her appellate briefing, she makes passing references to her interference claim but fails to set out specific arguments supporting it or explaining how the district court erred. Because these references are "mere background" to

Fonte v. See Memorial Health System, Not Reported in Fed. Rptr. (2021)
171 Lab.Cas. P 36,898

Case 2:21-cv-04031 Document 54 Date Filed: 07/22/2022 Page: 9 of 13

her main arguments, she has abandoned her interference claim. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014) (internal quotation marks omitted).

5    Fonte also argues that the district court should have evaluated her retaliation claim under the "convincing mosaic" framework set out in *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Although we have used this framework in Title VII discrimination cases, *see, e.g.*, *Chapter 7 Trustee v. Gate Gourmet*, 683 F.3d 1249, 1254–56 (11th Cir. 2012), we have not yet applied it in the **FMLA retaliation** context. Under the convincing-mosaic framework, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith*, 644 F.3d at 1328 (footnote and internal quotation marks omitted). An inference of discriminatory intent—in this context, retaliatory intent—includes an inference of causation. Because Fonte has failed to raise an inference of causation, she could not present a convincing mosaic of circumstantial evidence, even if this path were open to her.

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 1415856
United States Court of Appeals, Eleventh Circuit.

Nicole RAMOS, Plaintiff-Appellant,
v.
DELPHI BEHAVIORAL HEALTH GROUP, LLC, a Florida Limited Liability Company, Defendant-Appellee.

No. 21-11218
|
Non-Argument Calendar
|
Filed: 05/04/2022

Appeal from the United States District Court for the Southern District of Florida, D.C. Docket No. 0:19-cv-62039-JEM

**Attorneys and Law Firms**

Romin N. Currier, Pincus & Currier, LLP, West Palm Beach, FL, for Plaintiff-Appellant.

Lissette Gonzalez, Cole Scott & Kissane, PA, Miami, FL, Alexandra Valdes, Law Office of Alexandra Valdes, Miami, FL, Nicole M. Wall, Cole Scott & Kissane, PA, West Palm Beach, FL, for Defendant-Appellee.

Before Jordan, Newsom, and Black, Circuit Judges.

**Opinion**

PER CURIAM:

*1 Nicole Ramos appeals following the district court's entry of summary judgment in favor of her former employer, Delphi Behavioral Health Group (Delphi), in her lawsuit alleging interference and **retaliation** under the Family and Medical Leave Act (**FMLA**), 29 U.S.C. §§ 2615(a)(1), 2617(a). She also challenges the district court's denial of her motion to strike certain materials submitted by Delphi before summary judgment was entered. We address each argument in turn. After review,[1] we affirm.

**I. MOTION TO STRIKE**

Ramos asserts the district court erred by finding she did not have standing to challenge whether a June 25 phone call between Stanley Laguerre, Isabelle Garcia, and Jackie Ayers was illegally recorded. She also contends the district court erred by finding certain text messages between Ramos and Laguerre were not derived from the illegally recorded call because Delphi would not have known about the text messages without the June 25 recorded call.

Under the Federal Wiretap Act, it is unlawful for a person to intentionally intercept any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a). The contents of intercepted communications, or any evidence subsequently derived, cannot be presented in any proceeding in any court. *Id.* § 2515. However, it is lawful for an individual to intercept a communication if he is a party to it. *Id.* § 2511(2)(d). Section 2518 sets forth how to apply for authorization to intercept communications and allows an "aggrieved person" to move to suppress the contents of an intercepted communication if it was unlawfully intercepted. *See id.* § 2518(1), (10)(a). An aggrieved person is an individual who was a party to the intercepted communication or against whom the interception was directed. *Id.* § 2510(11).

The Florida Wiretap Act closely follows the Federal Wiretap Act and similarly proscribes intentionally intercepting any wire, oral, or electronic communication and excludes the use of such interceptions and evidence derived from those interceptions in court. Fla. Stat. §§ 934.03(1)(a), 934.06. One key difference between the federal and Florida acts is that, under Florida law, the prior consent of all parties is required for the recording to be legal. *Id.* § 934.03(2)(d). Like the federal law, § 934.09 sets forth how to apply for authorization to intercept communications and allows an "aggrieved person" to move to suppress the contents of an intercepted communication if it was unlawfully intercepted. *See id.* § 934.09(1), (10)(a). An aggrieved person is an individual who was a party to the intercepted communication or against whom the interception was directed. *Id.* § 934.02(9).

*2 The parties did not cite, and research did not uncover, a civil case applying the "aggrieved person" standard under Fla. Stat. § 934.09 or 18 U.S.C. § 2518. In *In re Cobo*, the Florida Supreme Court held that a grand jury witness was an "aggrieved person," as defined by the Florida Wiretap Act and, therefore, could suppress an illegally intercepted communication "involving him or which could or might tend to involve him with any offense other than those specifically authorized under the wiretap statute by" Fla. Stat. § 934.07.

Ramos v. Delphi Behavioral Health Group, LLC, Not Reported in Fed. Rptr. (2022)
65 NDLR P 62

Case 2:19-cv-00712-JDC Document 54 Filed 07/22/2022 Page: 11 of 13

287 So. 2d 43, 46-47 (Fla. 1973). However, the court did not explain why the witness was an aggrieved person or his relationship to the communication. *Id.* at 46-48. Further, police obtained the wiretap in question in the context of a criminal investigation, and the court justified the witness's standing by noting that Fla. Stat. § 934.07 was an exception to the constitutional right to privacy and was only authorized when investigating the statutorily enumerated offenses. *Id.* at 47-48.

The plaintiff bears the burden of establishing the constitutional requirements of standing: (1) that she suffered an "injury in fact"; (2) that there is a causal connection between the injury and the conduct cited; and (3) it is likely that the injury will be redressed by a favorable decision. *Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006) (quotation marks omitted). Even if a plaintiff meets these constitutional requirements, she may lack standing under several prudential principles, including that she cannot assert the legal interests of third parties. *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979). However, a party may have "third-party standing" if she establishes that: (1) she suffered an injury in fact; (2) she has a close relation to the third party; and (3) there is some hindrance to the third party's ability to protect his own interests. *Harris v. Evans*, 20 F.3d 1118, 1122 (11th Cir. 1994) (citing *Powers v. Ohio*, 499 U.S. 400, 409-12 (1991)).

It is unclear whether the "aggrieved person" requirement under the Florida and federal wiretap statutes applies to civil cases. *See* Fla. Stat. 934.09; 18 U.S.C. § 2518. The parties have not cited, and research has not uncovered, a case applying this standard in the civil context. Additionally, the Florida Supreme Court in *Cobo* did not address third-party standing and its holding was limited to an "aggrieved person" in the context of a criminal investigation. *See* 287 So. 2d at 44-48. Regardless, Ramos did not establish she had third-party standing to argue Delphi violated Laguerre's rights in the June 25 phone call because she failed to allege both a sufficiently close relationship with Laguerre and a hindrance preventing him from asserting his legal rights. *See Gladstone Realtors*, 441 U.S. at 100; *Harris*, 20 F.3d at 1122.

Moreover, the district court did not clearly err in finding Delphi did not rely on the June 25 recorded phone call in its motion for summary judgment, because it only used text messages derived from a separate, unrecorded call between Laguerre, Garcia, and Ayers on June 27. *See United States v. Delancy*, 502 F.3d 1297, 1309 (11th Cir. 2017) (stating when determining whether evidence is excludable as "fruit of the poisonous tree" in the criminal context, we look to whether the subsequent evidence came about by the exploitation of the initial illegality or, instead, by means sufficiently distinguishable to be purged of the primary taint); *Wexler v. Anderson*, 452 F.3d 1226, 1230 (11th Cir. 2006) (reviewing for clear error the district court's findings of fact). This finding was not clearly erroneous because Laguerre admitted to sending the relevant text messages after the unrecorded June 27 phone call, Garcia testified that Laguerre only mentioned his text messages with Ramos during the June 27 call, and the transcript of the recorded June 25 call shows that Ayers and Garcia referenced only unrelated text messages between Laguerre and Elaine McDonald, not the text messages involving Ramos. As a result, we are not left with the definite and firm conviction the district court made a mistake. *See Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007) (stating a factual finding is only clearly erroneous when this Court is "left with the definite and firm conviction that a mistake has been committed"). Accordingly, we affirm the district court's denial of Ramos's motion to strike.

## II. FMLA INTERFERENCE

*\*3* Ramos contends the district court erred by finding she did not show that Delphi denied her a benefit under the FMLA or the grounds it gave for her termination were not related to her FMLA leave.

Under the FMLA, eligible employees are entitled to 12 work weeks of unpaid leave during any 12-month period for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). This leave may be taken intermittently. *Id.* § 2612(b)(1). An employee must be reinstated to the position she held before she took FMLA leave. *Id.* § 2614(a).

The **FMLA** creates two types of claims—interference and **retaliation.** *Id.* § 2615(a)(1)-(2); *O'Connor v. PCA Fam. Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000). To establish an employer interfered with her FMLA rights, an employee need only show by a preponderance of the evidence that she was entitled to a benefit that was denied by her employer. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010). A plaintiff is not denied a benefit under the FMLA when she receives all the leave she requests. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1275 (11th Cir.

**Ramos v. Delphi Behavioral Health Group, LLC, Not Reported in Fed. Rptr. (2022)**
65 NDLR P 62

Case 0:21-cv-61617-WPD Document 54 Entered on FLSD Docket 07/22/2022 Page 12 of 13

1999). Moreover, where an employer did not deny leave time, the plaintiff cannot establish an FMLA interference claim, even where she was terminated and prevented from the continued use of such leave. *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1275 (11th Cir. 2020).

Even if a plaintiff establishes her FMLA rights were interfered with, those rights are not absolute. *Krutzig*, 602 F.3d at 1236. Therefore, while the employer's motives are irrelevant, it can defend against an interference claim based on an employee's termination by showing it fired her for reasons unrelated to FMLA leave. *Batson v. Salvation Army*, 897 F.3d 1320, 1331 (11th Cir. 2018). Although the employer has the burden of establishing this affirmative defense at trial, the analysis at the summary judge stage is "whether the evidence, viewed in the light most favorable to the non-moving party, establishes as a matter of law that the employer would have terminated the employee regardless of her request for or use of FMLA leave." *Id.* at 1331 & n.6.

The district court did not err in entering summary judgment in favor of Delphi on Ramos's FMLA interference claim because, by admitting it reinstated her after her FMLA leave and granted all her future leave requests, she failed to show it had denied her a benefit under the FMLA. *See Krutzig*, 602 F.3d at 1235. Thus, she failed to establish an FMLA interference claim, even though she was terminated and prevented from the continued use of FMLA leave. *See Munoz*, 981 F.3d at 1275.

Delphi also demonstrated it fired Ramos for reasons wholly unrelated to her FMLA leave. *See Batson*, 897 F.3d at 1331. The undisputed evidence showed Delphi cited unprofessional behavior in Ramos's termination letter and at her termination meeting. Delphi fired two other employees as a result of the same investigation and for similar misconduct. Although Ramos claims Delphi did not raise her drug use as a ground for dismissal until this suit, she admits Delphi has always cited as grounds for termination her inappropriate relationship with a subordinate and lying about it during a formal investigation. Delphi also did not cite known drug use by Laguerre and McDonald in their termination letters. While Michael Borkowski testified Ramos's drug use factored into his decision to fire her, he stated the primary basis for her termination was her inappropriate relationship with a subordinate and lying about it during a formal investigation. Ramos also admits to this inappropriate relationship, that she lied during the formal investigation, and that she used drugs. Last, she conceded her job was vital to the company and it was reasonable to advertise it while she was on FMLA leave in case she could not return. Given these undisputed facts, a reasonable jury could not conclude Delphi fired her for using FMLA leave. *Batson*, 897 F.3d at 1331 & n.6. Accordingly, we affirm the grant of summary judgment in this respect.

### III. FMLA RETALIATION

*4 Ramos asserts the district court erred by finding she did not establish a causal link between her FMLA leave and her termination or raise a genuine dispute on whether Delphi's legitimate, non-discriminatory grounds for her firing were pretextual.

To establish an **FMLA retaliation** claim, an employee must show her employer intentionally discriminated against her for exercising a right guaranteed under the **FMLA**. *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001). Unlike an interference claim, an employee bringing a retaliation claim faces the increased burden of showing her employer's actions "were motivated by an impermissible retaliatory or discriminatory animus." *Id.* (quotations omitted).

Without direct evidence of retaliatory intent, an employee may proffer circumstantial evidence through the application of a three-step, burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* First, the employee must establish a *prima facie* case of **FMLA retaliation** by showing: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse decision; and (3) the decision was causally related to the protected activity. *Id.* Close temporal proximity between an employee's protected conduct and the adverse action is generally sufficient to create a genuine issue as to whether there is a causal connection. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006). However, temporal proximity, standing alone, cannot establish the causation element of a *prima facie* case. *Strickland*, 239 F.3d at 1207 n.10. Further, intervening acts or misconduct can sever the causal connection between a protected act and an adverse action. *See Wascura v. City of S. Mia.*, 257 F.3d 1238, 1248 (11th Cir. 2001); *Fleming v. Boeing Co.*, 120 F.3d 242, 248 (11th Cir. 1997).

Second, if the employee successfully makes out a *prima facie* case of **FMLA retaliation**, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason

for the adverse action. *McDonnell Douglas*, 411 U.S. at 802-803. Third, once an employer articulates a legitimate, non-discriminatory reason, the employee must show the employer's proffered reason was pretextual. *Id.* at 804. The employee must show the reason was actually false and that discrimination or retaliation was the real reason behind the challenged action. *Matamoros v. Broward Sheriff's Off.*, 2 F.4th 1329, 1337 (11th Cir. 2021). One way to satisfy this burden is by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (quotation marks omitted). At the summary judgment stage, we must ask "whether the evidence, viewed in the light most favorable to the non-moving party, establishes as a matter of law that the employer would have terminated the employee regardless of her request for or use of FMLA leave." *Batson*, 897 F.3d at 1331.

The district court did not err in entering summary judgment in favor of Delphi on Ramos's retaliation claim because she failed to establish a *prima facie* case of retaliation. Ramos failed to establish the causation element of her *prima facie* retaliation claim by pointing only to Borkowski's knowledge of her leave and the temporal proximity between her leave and termination. *See Hurlbert*, 439 F.3d at 1298. The discovery of her misconduct was an intervening factor that severed the causal link between her FMLA leave and her termination. *See Wascura*, 257 F.3d at 1248; *Fleming*, 120 F.3d at 1298. Ramos also admitted to the misconduct cited by Delphi—that she had an inappropriate relationship with her subordinate, lied during a formal investigation, and used drugs. Importantly, Delphi fired two other employees as a result of the same investigation and for similar misconduct.

**\*5** Moreover, even if Ramos had presented a *prima facie* case of **FMLA retaliation**, she failed to raise a genuine dispute about whether Delphi's legitimate, non-discriminatory reasons were false, because she admitted they were true. *See Matamoros*, 2 F.4th at 1337; *Batson*, 897 F.3d at 1331. Even without this admission, the evidence she presented did not show pretext. While she argues Delphi's failure to cite her drug use in her termination letter or at her termination meeting demonstrates pretext, Delphi similarly did not cite known drug use by Laguerre and McDonald in their termination letters. Even if Ramos thinks Delphi should have cited her drug use, Delphi can cite any reason that is not unlawful. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018) (stating an employer "may fire an employee for a good reason, a bad reason, a reason based on erroneous fact, or for no reason at all," as long as it is not an unlawful reason). Further, Ramos concedes her position at Delphi was vital and it was reasonable for it to advertise her position to prepare for the possibility that she would not return from FMLA leave. Finally, though Borkowski's draft email showed he was concerned about Ramos's ability to continue to perform in her position, it sought to undergo an "interactive process" with her, which was meant to identify and overcome her limitations, consistent with federal laws protecting those with disabilities. 42 U.S.C. § 12116; 29 C.F.R. § 1630.2(o)(3). Accordingly, we affirm in this respect as well.

**AFFIRMED.**

**All Citations**

Not Reported in Fed. Rptr., 2022 WL 1415856, 65 NDLR P 62

Footnotes

1     We review a district court's ruling on a motion to strike for an abuse of discretion. *Evans v. Books-A-Million*, 762 F.3d 1288, 1295 (11th Cir. 2014). We review *de novo* the entry of summary judgment, "construing all facts and drawing all reasonable inferences in favor of the nonmoving party." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291-92 (11th Cir. 2012).

End of Document     © 2022 Thomson Reuters. No claim to original U.S. Government Works.