[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-10491

_____

DORIS LAPHAM,

Plaintiff-Appellant,

*versus*

WALGREEN CO.,
a for-profit and foreign corporation,
a.k.a. Walgreens,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:19-cv-00579-PGB-DCI

———————————

Before WILSON, BRANCH, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Doris Lapham worked for the Walgreen Co. ("Walgreens") in various roles and at multiple store locations for over a decade until April 13, 2017, when she was fired for the stated reasons of insubordination and dishonesty. Lapham's version of events, however, is that she was unfairly fired as a result of her requests for leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–54, so that she could provide care to her disabled son. Lapham alleges that Walgreens both interfered with her attempts to obtain leave in violation of the FMLA and retaliated against her for those attempts in violation of the FMLA and Florida's Private Sector Whistleblower Act ("FWA"), Fla. Stat. § 448.102 *et seq.*[1] However, the district court below ultimately granted summary judgment in favor of Walgreens on all of these claims.

This appeal asks us to determine whether the district court erred in granting summary judgment to Walgreens on these claims and, as part of that larger inquiry, what the proper causation standard is for FMLA and FWA retaliation claims. After careful consideration, and with the benefit of oral argument, we hold that the

———————————

[1] Courts have referred to this law as Florida's "private sector Whistle-Blower Act," *Golf Channel v. Jenkins*, 752 So. 2d 561, 563 (Fla. 2000), or "Whistle Blower's Act," *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 947 (11th Cir. 2000)

proper causation standard for both FMLA and FWA retaliation claims is but-for causation and that the district court correctly granted summary judgment in favor of Walgreens on Lapham's retaliation and interference claims.  Accordingly, we affirm.

## I.    BACKGROUND

### A.    Factual Background

Lapham is a single mother whose son has Lennox-Gastaut syndrome and Dravet syndrome, which are severe forms of epilepsy.[2]  As a result of these health issues, Lapham's son is non-verbal, uses a wheelchair, and requires a caregiver.

On November 16, 2006, Lapham was hired by Walgreens as a service clerk.  She subsequently became a photo specialist technician and then was promoted to a drug store management trainee. In March 2012, Lapham voluntarily stepped down from her position as a drug store management trainee to become a shift lead.[3] According to Lapham, she made this switch so that she could work overnight shifts and have more time during the day to care for her son.  Between 2011 and 2016, Lapham requested and received

---

[2] Lapham's son was twenty years old as of January 23, 2020.

[3] As a shift lead, Lapham was responsible for "cash handling, opening and closing the store as needed, store maintenance, department maintenance, engaging with employees, engaging with customers, SIMS responsibilities, pricing and inventory reports, cleanliness of the store, customer service, communicating with other employees effectively, completing tasks assigned by the [s]tore [m]anager or [a]ssistant [s]tore [m]anager," and was required to "follow[] Walgreens' rules, policies, and procedures."

intermittent FMLA leave on a yearly basis for purposes of providing care to her son.

During this timeframe, Lapham worked at Store No. 3107 in Sanford, Florida and received annual performance reviews. For the period from September 2011 through August 2012, Lapham received an overall performance score of 1.0 out of 5.0, which indicated that she had not been achieving expectations and had some performance issues.[4] Lapham's performance subsequently improved, and she received a score of 3.0 for the period from September 2013 through August 2014,[5] which indicated she was achieving expectations, and a score of 3.2 for the period from September 2014 through August 2015.[6]

On November 11, 2015, Lapham asked another employee to receive a delivery truck by himself while she stayed at the register.

---

[4] Lapham's 2012 performance evaluation was completed by Walgreens store manager Jim Matheny. Matheny included a list of complaints in his evaluation of Lapham, noting that she, among other things, "seldom" completed assigned projects; lied about completing tasks; did "little to nothing to help with loss prevention"; took an "excessive amount of breaks"; regularly belittled employees "in front of customers and other employees"; and even caused at least one other employee to quit.

[5] Lapham's 2014 performance evaluation was completed by Steven Parrish. Parrish did not include any comments in his evaluation of Lapham.

[6] Store manager Karina Kaliman completed Lapham's 2015 performance evaluation. Kaliman wrote that Lapham had "shown commitment for [the] store condition" and been "on top of the restroom[] conditions," but could be "more consistent on detailing" and "needs to be more consistent on [Walgreens'] programs."

Lapham claimed during her deposition that she received permission to do this from the assistant store manager, Michael Shariff, because she had recently broken her hip and could not lift anything over twenty pounds. The store manager, Karina Kaliman, met with Lapham and Shariff on November 21, 2015, to discuss the incident and subsequently disciplined Lapham with a formal notice.

On October 14, 2016, Lapham received her performance review for the period from September 2015 through August 2016. Kaliman, the outgoing store manager, had completed that evaluation, but the new store manager, Chad Dunlap, shared it with Lapham.[7] Kaliman had given Lapham an overall score of 2.3 out of 5.0, which indicated that she was only "[p]artially [a]chieving [e]xpectations." Kaliman had also written that Lapham "respond[ed] to customer needs in [a] friendly and respectful manner" but "need[ed] to be more proactive [in] assisting customers" and "promoting sales." Kaliman had also indicated that Lapham sometimes left early from day shifts, "was not consistent on finishing her

---

[7] Dunlap overlapped with Lapham at Store No. 3107 in 2016 for approximately "[t]wo to three months." Dunlap never formally disciplined Lapham but did have "coaching conversations" and "performance discussions" with her. Dunlap testified that Lapham was a "loyal employee" whose work performance was "acceptable," but also acknowledged that he had had conversations with her regarding "communication with team members and following up on assigned tasks."

task list," and "need[ed] to have better communication with [the] management team."

Around this time, Lapham requested a transfer to a different store location closer to her home. Walgreens granted that request and transferred Lapham to Store No. 4423 in Daytona Beach, Florida, on January 28, 2017.

Shortly after Lapham began working at Store No. 4423, she was placed on a sixty-day Performance Improvement Plan ("PIP") in accordance with Walgreens' policy based on her 2016 performance score.[8] Lapham discussed the PIP at a meeting with the store manager of Store No. 4423, Lisa Shelton, who had been told about the decision to place Lapham on a PIP by the district manager, Nicole Macek. Lapham also reached out to Walgreens' Employee Relations Department ("HR") for additional clarification on the reason for the PIP and the overall PIP process.

Lapham claims that, around this time, she complained about four categories of work conditions at Store No. 4423: (1) blocked fire exits; (2) the presence of bodily fluids; (3) a cockroach infestation; and (4) an unsanitary cooler containing salmonella and bugs. Lapham took some photographs of the conditions at Store No.

---

[8] Under Walgreens' policy, PIPs are required for all employees who score below a certain level on performance evaluations.

4423, but never submitted any of her photographs to either Shelton or Walgreens' corporate office.[9]

On February 16, 2017, Lapham submitted an FMLA leave request to Shelton for her signature as store manager. The request was for intermittent FMLA leave from February 2017 through February 2018 and was Lapham's first FMLA request at Store No. 4423. Walgreens maintains that Lapham was supposed to send the paperwork directly to the Unpaid Leave Department and that Shelton was not responsible for playing any role in the approval process. On February 23, 2017, after waiting a week for Shelton's signature, Lapham complained to both Shelton and HR about the delay. Shelton signed the request form that day and then sent it to HR for approval four days later, on February 27, 2017.

On March 3, 2017, the Unpaid Leave Department mailed Lapham a letter asking for clarification regarding the start date for the requested leave period. Lapham never received that letter, however, because it had been sent to her old address on file with the Unpaid Leave Department and not her new address that she had listed on the request form.

On March 31, 2017, Lapham asked Shelton for a day off to take her son to a doctor's appointment. Shelton called HR about the single-day request and was told that Lapham did not have any FMLA days available to use because, at that time, Lapham had not

---

[9] These health and safety complaints are not a major feature of the parties' arguments on appeal.

been approved for intermittent FMLA leave. Accordingly, Shelton denied Lapham's request for the day off, allegedly telling her that "the [work] schedule was already up" and to "make [other] accommodations" for her son. Meanwhile, Shelton did not sign Lapham's updated FMLA leave request form that day. Lapham subsequently learned that her FMLA leave request had been denied because she had not provided the additional information regarding dates. Lapham promptly filled out an updated FMLA leave request form for that year, this time specifying the start and end dates (March 31, 2017, through March 31, 2018) on the form itself,[10] and gave the form to Shelton for her signature.

On April 4 and 5, 2017, while the updated request form remained unsigned, Shelton contacted HR to discuss Lapham's work performance. During one of those conversations, Shelton told Amanda Miranda, an employee in HR, that Lapham was "actively disregarding instructions," lying to management, and "sabotaging the store." Miranda advised Shelton that Walgreens would support her decision to fire Lapham if she properly documented instances

---

[10] Lapham's original leave request form was submitted along with a certification from her health care provider that included specific start and end dates for leave. Lapham generally maintains that Walgreens should not have needed to ask for clarification as to those dates and that, by doing so, Walgreens created an unnecessary delay.

of insubordination and reviewed everything with the district manager prior to moving forward with termination.

During both of these conversations, Shelton mentioned Lapham's request for FMLA leave. Specifically, Shelton reported that Lapham called out of work for two days even though her request had not yet been approved and that Lapham said she would "take a leave" until the current manager had left and the PIP had ended. Miranda advised Shelton to refrain from disciplining Lapham for any attendance issues until the FMLA leave request was approved or denied. Miranda also advised Shelton that, if she decided to terminate Lapham, she should make it clear that the decision was based on Lapham's poor performance and not Lapham's requests for leave. Miranda has since testified that it is standard policy for HR to ask the manager in these discussions whether the given employee has requested leave and whether there is any additional relevant information.

Following her discussions with Miranda, Shelton created a document on April 6, 2017, containing a list of instances wherein Lapham failed to complete assigned tasks or otherwise meet expectations on April 5 and 6. Shelton claims that this was not a comprehensive list of instances of Lapham's poor performance and that Lapham generally "exaggerate[ed] the truth" about some things and failed to perform certain tasks.

The next day, on April 7, 2017, Lapham complained to Shelton about Shelton's delay in signing her updated FMLA leave request form, which she had submitted for Shelton's signature a

week prior.  Shelton then signed it and forwarded the request to HR that same day.

While the request was pending, Lapham called HR on April 10, 2017, to report that Shelton was retaliating against her.  Meanwhile, on April 12, 2017, Ashley Williams, another shift lead at Store No. 4423, authored a written statement in which she alleged that, during a shift on the weekend of April 8 and 9, Lapham instructed other employees not to perform duties that Shelton and the assistant store manager had assigned to them.  Lapham, however, swears that Williams's account is incorrect and denies ever telling other employees not to do their assigned tasks.

Finally, on April 13, 2017, Lapham arrived at work and was called into the office, where Shelton informed her that she had been terminated.  Walgreens subsequently denied Lapham's FMLA leave request on the basis of her termination.  The company maintains that Lapham was properly terminated for insubordination and dishonesty and that her request for FMLA leave was therefore properly denied.

### B.    Procedural History

On February 5, 2019, Lapham initiated a lawsuit against Walgreens in the Seventh Judicial Circuit in and for Volusia County, Florida, bringing claims under the FWA, the FMLA, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01 *et seq*. Walgreens removed the action to federal court pursuant to 28 U.S.C. §§ 1331 and 1441(a) the following month.

Lapham filed the operative amended complaint on April 16, 2019. That complaint brought four claims against Walgreens: retaliation in violation of the FWA (Count I); retaliation in violation of the FMLA (Count II); interference in violation of the FMLA (Count III); and retaliation in violation of the FCRA (Count IV). Walgreens moved to dismiss Counts I and IV, arguing that Lapham had failed to state a claim under either the FWA or the FCRA. On July 15, 2019, after full briefing, the district court granted in part and denied in part the motion, dismissing only Count IV. Following the resolution of the motion to dismiss, Walgreens filed its answer. In that filing, Walgreens generally denied or claimed to lack knowledge about Lapham's allegations and raised seven affirmative defenses.

On June 8, 2020, Walgreens filed a motion for summary judgment, challenging all three of Lapham's remaining claims. As to the retaliation claims, Walgreens first argued that Lapham could not establish a prima facie case of retaliation because she had not engaged in any protected activity. Walgreens next argued that, even if Lapham had engaged in any protected activity, she could not satisfy the causation element of retaliation because she admitted at her deposition that she had not raised any complaints about employment conditions until after Shelton had already consulted with HR about Lapham's performance. Walgreens then argued that Lapham could not show that its reasons for terminating her were merely pretext for retaliation. As to the interference claim, Walgreens argued that Lapham's request for FMLA leave was

denied solely because she had already been terminated and thus was no longer eligible for FMLA leave.[11]

Lapham filed her response in opposition to Walgreens' motion for summary judgment on July 15, 2020. As to the retaliation claims, Lapham argued that her various complaints about employment conditions between February 2017 and April 2017 qualified as protected activities. Relatedly, Lapham maintained that the timing of her complaints supports the causation element of retaliation, since she had engaged in protected activity less than two months before her termination. Lapham also argued that Walgreens' reasons for termination were pretextual, as evidenced by the company's shifting and inconsistent explanations for the decision. As to the interference claim, Lapham argued that she would have qualified for and been granted FMLA leave had she not been wrongfully terminated.[12] According to Lapham, Walgreens committed interference by failing to process and grant her requests for

---

[11] In support of its motion for summary judgment, Walgreens submitted, among other things, Lapham's objections and verified answers to its first set of interrogatories; a transcript of the July 12, 2019, Appellate Hearing before the Florida Department of Economic Opportunity; transcripts of the depositions of Lapham, Dunlap, Keri Garfield, Miranda, and Shelton; and the declarations of Miranda and Williams. The parties also submitted a joint stipulation of agreed material facts.

[12] In addition to the documents submitted by Walgreens, Lapham relied upon, among other things, her performance rating history report; her formal request for leave; the declaration of Michael Rivera, one of Lapham's former managers at Walgreens; and various other employment documents.

leave and by failing to provide her with a notice of her rights and responsibilities in a timely manner.

In its reply, Walgreens asserted that the applicable causation standard for retaliation is but-for causation and maintained that Lapham could not make such a showing. Walgreens similarly argued that Lapham could not show that she engaged in any protected activity or that any actionable interference occurred.

In a surreply, Lapham disputed Walgreens' contention that but-for causation applies to FMLA retaliation claims, noting that the Eleventh Circuit had not opined on the matter and that other circuit courts have held otherwise. Aside from the causation issue, Lapham generally maintained that triable issues of fact existed as to each of her claims.

On October 19, 2020, the district court issued an order granting in part and denying in part Walgreens' motion for summary judgment. The district court began its analysis with the two retaliation claims and determined that Lapham had established a prima facie case of FWA retaliation based only on her objections to an alleged insect infestation and Shelton's alleged interference with her FMLA request, and of FMLA retaliation based on her request for leave. In doing so, the district court concluded that Lapham could (and did) satisfy the causation requirement by showing merely a "close temporal proximity" between a protected activity and an adverse action. The district court then shifted the burden to Walgreens to proffer a legitimate, non-retaliatory reason for the adverse action and found that the company had adequately done

so. However, the court also found that Lapham had presented suf-
ficient evidence for a reasonable jury to conclude that her termina-
tion was motivated by retaliation for requesting FMLA leave rather
than any of her documented misconduct. Thus, the court allowed
the FMLA retaliation claim (Count II) to survive in full and allowed
the FWA retaliation claim (Count I) to survive insofar as it was tied
to the request for FMLA leave. The district court then turned to
Lapham's FMLA interference claim (Count III) and similarly con-
cluded that, because a reasonable jury could conclude that the prof-
fered reasons for Lapham's termination were pretextual, it could
also conclude that Walgreens interfered with her FMLA rights by
terminating her and denying her request for leave.

On November 16, 2020, Walgreens filed a motion for recon-
sideration asking the district court to reconsider its causation anal-
ysis of the retaliation claims and to apply a but-for causation stand-
ard. Walgreens also asked the district court to reconsider whether
any "actual violation" of law occurred for purposes of the FWA.
According to Walgreens, these matters, if properly revisited, re-
quired the dismissal of all three claims. In response, Lapham de-
fended the summary judgment ruling and asserted that Walgreens'
rehashed arguments did not warrant reconsideration.

On January 14, 2021, the district court granted the motion
for reconsideration. Critically, the district court agreed with
Walgreens that but-for causation is the proper causation standard
for both FWA and FMLA retaliation claims in light of the Supreme
Court's reasoning in *University of Texas Southwestern Medical Center*

*v. Nassar*, 570 U.S. 338 (2013). *See id.* at 351–63 (determining that the proper standard of causation for retaliation claims under Title VII of the Civil Rights Act of 1964 is but-for causation based on 42 U.S.C. § 2000e-3(a)'s use of the word "because"). Using the but-for causation standard, the district court concluded that Lapham had "fail[ed] to produce evidence that [Walgreens'] proffered reason for her termination . . . was merely a pretext to mask its real reason (*i.e.*, FMLA retaliation), and that but for the latter, [Walgreens] would not have fired her." Relatedly, the district court also concluded that Lapham had failed to establish any triable issues as to the interference claim. Based on these determinations, the district court instructed the clerk to enter judgment in favor of Walgreens on all three of Lapham's claims.

Lapham timely appealed.

## II.    STANDARD OF REVIEW

"We review [a] district court's grant of summary judgment de novo." *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019). In doing so, we "view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). Summary judgment is proper when the evidence, viewed in this light, "presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." *Id.* (quoting *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1307 (11th Cir. 2013)). We may affirm a grant of summary judgment "if there exists any adequate ground for doing so, regardless of whether it is

. . . one on which the district court relied." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1117 (11th Cir. 1993).

## III.    ANALYSIS

On appeal, Lapham argues that the district court erred by entering judgment in favor of Walgreens on her FMLA and FWA retaliation claims and her FMLA interference claim. For the reasons that follow, we disagree.

### A.    The Retaliation Claims

We begin our analysis with Lapham's two retaliation claims. Claims of retaliation can be supported with either direct or circumstantial evidence. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001). But when a plaintiff alleging retaliation presents only circumstantial evidence and no direct evidence, we apply the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–05 (1973). *See McAlpin v. Sneads*, 61 F.4th 916, 927 (11th Cir. 2023). This is true for both FMLA retaliation and FWA retaliation claims. *See id*.

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation. *Id*. To do so, the plaintiff must show that "(1) [s]he engaged in statutorily protected [conduct]; (2) [s]he suffered an adverse employment action; and (3) there is some causal relation between the two events." *Id*. (quoting *Rice-Lamar v. City of Fort Lauderdale*, 853 So. 2d 1125, 1132–33 (Fla. Dist. Ct. App. 2003)). If the plaintiff makes that initial showing, the burden next "shifts to the defendant to proffer a legitimate reason for the adverse action" taken against the

plaintiff. *Id.* (quoting *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000)). This responsive burden is a simple "burden of production that 'can involve no credibility assessment.'" *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). And if the defendant clears that "low" hurdle, *see id.*, "[t]he burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the 'legitimate' reason is merely pretext for prohibited, retaliatory conduct," *McAlpin*, 61 F.4th at 927 (alteration in original) (quoting *Sierminski*, 216 F.3d at 950). The plaintiff, therefore, bears the ultimate burden of persuasion. *See Flowers*, 803 F.3d at 1336.

At the outset, Lapham contends that the *McDonnell Douglas* framework is inapplicable because the record contains direct evidence of retaliation in the form of the call records and testimony regarding the April 4 and 5, 2017, conversations between Shelton and HR. That evidence, in Lapham's view, clearly establishes that Shelton "complained" about her FMLA requests and thus constitutes direct evidence that Shelton possessed a "retaliatory attitude." This view is mistaken. The evidence relating to the April 4 and 5 conversations certainly establishes that Shelton *mentioned* Lapham's FMLA leave requests while discussing Lapham's workplace conduct (which included then-unapproved absences) with HR. At best, this supports an *inference* that Lapham's termination was connected to the requests for FMLA leave, but it does not directly show that Shelton harbored any ill will on account of the requests. And, as Lapham implicitly concedes, the rest of the evidence in the

record is circumstantial as well.  Accordingly, *McDonnell Douglas* squarely applies.

Within the framework of *McDonnell Douglas*, Lapham contends that she met her initial burden to establish a prima facie case of retaliation and also met her subsequent burden to rebut Walgreens' supposed nondiscriminatory justifications for her termination.  In making this argument, Lapham maintains, as she did below, that a prima facie case of retaliation under both the FMLA and the FWA requires merely a motivating-factor showing of causation and not a but-for showing.[13]  As noted, the district court initially agreed with Lapham but, on reconsideration, determined that her retaliation claims must satisfy a but-for causation standard.  And given that we have not yet clearly articulated the causation standard for FMLA and FWA retaliation claims,[14] this is

---

[13] Walgreens does not now dispute that Lapham engaged in statutorily protected conduct and suffered an adverse employment action—two of the three components of the prima facie case of retaliation.  Additionally, Lapham does not dispute that Walgreens has proffered what it claims are legitimate reasons for her termination.  Thus, the dispute before us centers around the causation component of the prima facie case and the question of pretext.

[14] On one hand, we have said that, to prove FMLA retaliation, an employee must show that her "employer's actions 'were *motivated by* an impermissible retaliatory or discriminatory animus.'"  *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017) (emphasis added) (quoting *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001)); *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1267–68 (11th Cir. 2008) (same).  On the other hand, we have also said that FMLA retaliation claims arise when "an employee asserts that his employer discriminated against him *because* he engaged in activity protected by the [FMLA]."  *Jones*, 854 F.3d at

unsurprisingly one of the main points of contention between the parties on appeal.

In resolving this issue, we begin where we must: with the text of the relevant statutes. The retaliation provision of the FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual *for* opposing any practice made unlawful by this subchapter."[15] 29 U.S.C.

---

1267 (emphasis added) (quoting *Strickland*, 239 F.3d at 1206); *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1272 (11th Cir. 2012) (using the same "because" language); *see also Batson v. Salvation Army*, 897 F.3d 1320, 1331 (11th Cir. 2018) ("At summary judgment, . . . we ask whether the evidence, viewed in the light most favorable to the non-moving party, establishes as a matter of law that the employer would have terminated the employee regardless of her request for or use of FMLA leave.").

[15] Some of our sister circuits have suggested that 29 U.S.C. § 2615(a)(2) is not the exclusive retaliation provision of the FMLA and that 29 U.S.C. § 2615(a)(1) might be a better fit, depending on the circumstances of the case. *See* § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."); *see, e.g., Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166–67 (2d Cir. 2017) ("We now hold that FMLA retaliation claims like [the plaintiff's], *i.e.*, terminations for exercising FMLA rights by, for example, taking legitimate FMLA leave, are actionable under § 2615(a)(1)."); *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 160 n.4 (1st Cir. 1998) ("The [FMLA] itself does not explicitly make it unlawful to discharge or discriminate against an employee for exercising her rights under the Act . . . . Nevertheless, the Act was clearly intended to provide such protection. . . . Such protection can be read into § 2615(a)(1) . . . ."). *But see Bryant v. Dollar Gen. Corp.*, 538 F.3d 394, 400–02 (6th Cir. 2008) (determining that § 2615(a)(2) is a source of retaliation claims).

§ 2615(a)(2) (emphasis added).  Meanwhile, the retaliation provision of the FWA provides that "[a]n employer may not take any retaliatory personnel action against an employee *because* the employee has" engaged in a specified protected activity.  Fla. Stat. § 448.102 (emphasis added).  Thus, both provisions contain either "because [of]" language or equivalent language.[16]  *See For*, *Black's Law Dictionary* (6th ed. 1990) ("Used in sense of 'because of,' 'on account of,' or 'in consequence of.'"); *For, Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/for (last

---

On some occasions, this Court has clearly divided § 2615(a)(1) and § 2615(a)(2), framing the former as the source of interference claims and the latter as the source of retaliation claims.  *See O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000); *Strickland*, 239 F.3d at 1206.  On other occasions, however, this Court has acknowledged some connection between § 2615(a)(1) and retaliation claims.  *See Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1275, 1280 (11th Cir. 2020) (citing both § 2615(a)(1) and (2) for the proposition that the FMLA prohibits retaliation, but later referring to § 2615(a)(2) as "[t]his anti-retaliation provision"); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1247 (11th Cir. 2015) (interpreting § 2615(a)(1) to "provide protection against retaliation for exercising or attempting to exercise rights under the [FMLA]").  Either way, our precedent establishes that § 2615(a)(2) is relevant to FMLA retaliation claims; we therefore consider § 2615(a)(2) and its use of the word "for" when determining the proper causation standard for FMLA retaliation claims.  This is consistent with the parties' arguments.

[16] Insofar as it is relevant, § 2615(b)—which governs interference with proceedings or inquiries—uses "because [of]" causation language.  *See id*. ("It shall be unlawful for any person to discharge or in any manner discriminate against any individual *because* such individual [engaged in a specified protected activity]." (emphasis added)).  There is no motivating-factor causation language within § 2615.

visited September 27, 2023) (describing "for" as being synonymous with "because of"). Although this kind of language does not, upon first glance, explicitly endorse one causation standard or the other, the Supreme Court's decision in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), indicates that this kind of language carries with it a but-for standard.

In *Nassar*, the Supreme Court was faced with the task of "defin[ing] the proper standard of causation for Title VII retaliation claims." *Id.* at 346. As relevant, Title VII's retaliation provision provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . *because* he has opposed any practice made an unlawful employment practice by this subchapter, or *because* he [engaged in a specified protected activity]." 42 U.S.C. § 2000e-3(a) (emphasis added). In considering the full meaning and implications of that language with respect to causation, the Supreme Court first noted that the default causation standard in tort law, historically speaking, had been the but-for standard. *See Nassar*, 570 U.S. at 346–47; *see also Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). Thus, the Supreme Court reasoned, "absent an indication to the contrary in the statute itself," a statute that sounds in tort is "presumed to have incorporated" the default but-for standard. *See Nassar*, 570 U.S. at 347. The Supreme Court then contrasted Title VII's retaliation provision, § 2000e-3(a), with its discrimination provision, 42 U.S.C. § 2000e-2(m), which expressly establishes a

motivating-factor causation standard.[17]  *See id.* at 347–57; *see also*
§ 2000e-2(m) ("[A]n unlawful employment practice is established
when the complaining party demonstrates that race, color, reli-
gion, sex, or national origin was a *motivating factor* for any employ-
ment practice, even though other factors also motivated the prac-
tice." (emphasis added)).  The absence of similar motivating-factor
language in the retaliation provision, according to the Supreme
Court, supported a but-for reading of that provision.  *See Nassar*,
570 U.S. at 354 (explaining that, "[i]f Congress had desired to make
the motivating-factor standard applicable to all Title VII claims,"
Congress "could have inserted the motivating-factor provision as
part of a section that applies to all such claims, such as § 2000e-5,
which establishes the rules and remedies for all Title VII enforce-
ment actions").  Based on this reasoning, the Supreme Court con-
cluded that the proper causation standard for Title VII retaliation
claims is but-for causation.  *See id.* at 362–63.  And notably, in doing
so, the Supreme Court declined to defer to the interpretation of
Title VII's retaliation provision articulated in an Equal Employ-
ment Opportunity Commission guidance manual.  *See id.* at 360–
62.

Now, to be sure, *Nassar* concerned Title VII—a different
statute from the ones at issue here.  Thus, when looking to *Nassar*

---

[17] The Supreme Court also compared Title VII's retaliation provision to the
language of the provisions enacted by the Age Discrimination in Employment
Act of 1967 and the Americans with Disabilities Act of 1990.  *See Nassar*, 570
U.S. at 349–51, 354–57.

for guidance on how to interpret the FMLA and the FWA, "we 'must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.'" *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009) (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 393 (2008)). With that in mind, the retaliation provisions of both the FMLA and the FWA are suffi-ciently similar to the retaliation provision of Title VII for *Nassar* to be especially instructive. Critically, all three provisions use "be-cause [of]" language or an equivalent. *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 2615(a)(2); Fla. Stat. § 448.102; *see also Burrage v. United States*, 571 U.S. 204, 212–13 (2014) ("Where there is no textual or contextual indication to the contrary, courts regularly read phrases like 'results from' to require but-for causality. . . . Our insistence on but-for causality has not been restricted to statutes using the term 'because of.'"). And all three provisions were enacted against the historic, default but-for causation standard.[18] *See Nassar*, 570 U.S. at 346–47; *Comcast*, 140 S. Ct. at 1014. Moreover, at least with

---

[18] Many district courts within this Circuit have determined, based on *Nassar*, that the applicable causation standard for FMLA retaliation claims is the "but-for" standard. *See, e.g., Jimenez-Ruiz v. Sch. Bd.*, No. 8:18-CV-01768, 2020 WL 434927, at *8 n.4 (M.D. Fla. Jan 28, 2020); *Garrard v. Wal-Mart Stores, Inc.*, No. 8:15-cv- 2476, 2016 WL 11491316, at *4 (M.D. Fla. Nov. 7, 2016); *Jones v. Allstate Ins. Co.*, 281 F. Supp. 3d 1211, 1219 (N.D. Ala. 2016), *aff'd*, 707 F. App'x 641 (11th Cir. 2017); *Sparks v. Sunshine Mills, Inc.*, No. 3:12-cv-02544, 2013 WL 4760964, at *17 n.4 (N.D. Ala. Sept. 4, 2013), *aff'd*, 580 F. App'x 759 (11th Cir. 2014). Those rulings are consistent with our precedent, which has endorsed construing the FMLA's retaliation provision in the same manner as Title VII's. *See Munoz*, 981 F.3d at 1280.

respect to the FWA, we are bound to follow *Nassar* because that is what the only Florida appellate court to address this issue did. *See Chaudhry v. Adventist Health Sys. Sunbelt, Inc.*, 305 So. 3d 809, 817 (Fla. Dist. Ct. App. 2020) ("*Nassar* requires the use of a 'but for' rather than a 'motivating factor' causation standard when analyzing claims under [the FWA]."); *see also Nunez v. Geico Gen. Ins. Co.*, 685 F.3d 1205, 1210 (11th Cir. 2012) ("Absent a clear decision from the Florida Supreme Court on [an] issue, 'we are bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently.'" (quoting *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002))).

Despite the parallels to Title VII's retaliation provision, Lapham insists that at least the FMLA's retaliation provision is meaningfully distinguishable because the FMLA elsewhere delegates authority to the Department of Labor ("DOL"), which has endorsed a "negative factor" causation standard for retaliation claims. This is in reference to 29 U.S.C. § 2654, a provision of the FMLA that states that "[t]he Secretary of Labor shall prescribe such regulations as are necessary to carry out" other portions of the FMLA, and 29 C.F.R § 825.220(c), a DOL regulation that interprets the FMLA to mean that "employers cannot use the taking of FMLA leave as a *negative factor* in employment actions." (Emphasis added). In light of these authorities, Lapham contends that we ought to defer to the DOL and read the FMLA's retaliation provision as departing from the default but-for causation standard.

When deciding whether to defer to an agency's interpretation of its own enabling statute, we are required to apply the two-step framework set forth by the Supreme Court in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984).[19]   Under that framework, we first ask "whether Congress has directly spoken to the precise question at issue." *Id.* at 842.  If Congress has, "that is the end of the matter," for we "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43.  If Congress has not, we then proceed to ask "whether the agency's answer is based on a permissible construction of the statute," *id.* at 843, or in other words, "whether the agency's construction is 'rational and consistent with the statute,'" *Sullivan v. Everhart*, 494 U.S. 83, 89 (1990) (quoting *NLRB v. Food & Com. Workers*, 484 U.S. 112, 123 (1987)). Thus, we defer to an agency's interpretation of a statute only when Congress has not directly spoken on the precise question at issue *and* the agency's interpretation is rational and consistent with the statute.

In this case, Lapham's deference argument fails at the first step of the *Chevron* framework.  Applying the reasoning of *Nassar*, by writing the FMLA's retaliation provision to include the equivalent of "because [of]" language (and no other causation language), Congress clearly chose to embrace the default but-for causation

---

[19] This is true at least for the time being.  *See Loper Bright Enters. v. Raimondo*, 143 S. Ct. 2429 (2023) (granting certiorari to consider "[w]hether the Court should overrule *Chevron* or at least clarify that statutory silence concerning controversial powers expressly but narrowly granted elsewhere in the statute does not constitute an ambiguity requiring deference to the agency").

standard. And because Congress did so, we cannot defer to the DOL's contrary interpretation. *See Hylton v. U.S. Att'y Gen.*, 992 F.3d 1154, 1158 (11th Cir. 2021) ("[I]f Congress has written clearly, then our inquiry ends and 'we must give effect to the unambiguously expressed intent of Congress.'" (quoting *Barton v. U.S. Att'y Gen.*, 904 F.3d 1294, 1298 (11th Cir. 2018))).

For these reasons, we hold that the proper causation standard for FMLA and FWA retaliation claims is but-for causation. Our next task, then, is to determine whether Lapham has raised any triable issue of fact as to her retaliation claims in light of the *McDonnell Douglas* framework and its incorporation of the but-for causation standard. *See Flowers*, 803 F.3d at 1336.

As relevant, but-for causation "is established whenever a particular outcome would not have happened 'but for' the purported cause." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020). Thus, the but-for test "directs us to change one thing at a time and see if the outcome changes." *Id.* If it does, the isolated factor is a but-for cause. And if it does not, the isolated factor is not a but-for cause, and all of the other factors, taken together, are sufficient. *See id.*; *see also Burrage*, 571 U.S. at 211 (describing a but-for cause as a "straw that broke the camel's back"). To be clear, single events often "have multiple but-for causes," so the but-for standard can be quite "sweeping," depending on the circumstances. *Bostock*, 140 S. Ct. at 1739. For purposes of *McDonnell Douglas*, this but-for standard demarcates the causation component of the employee's initial, prima facie showing requirement and also shapes the

subsequent burdens of both the employer (i.e., to proffer a legitimate reason sufficient to justify the termination) and the employee (i.e., to show that the reason proffered by the employer is pretextual).

With this understanding, we agree with the district court that Lapham has failed to produce sufficient evidence showing that Walgreens' proffered reasons for her termination were merely pretext for retaliation and that, but for the retaliation, Walgreens would not have fired her. Walgreens maintains that Lapham was terminated for insubordination and dishonesty, and that justification is consistent with Shelton's testimony during this litigation as well as what she reported to HR on April 4 and 5, 2017. It also is consistent with Lapham's performance reviews from previous years, in which other managers (i.e., not Shelton) reported that Lapham had performance and communication issues and failed to complete her assigned tasks on multiple occasions. And Lapham has failed to "meet [Walgreens' justifications] head on" and meaningfully rebut them.[20] *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253,

---

[20] To be sure, Lapham has broadly denied "engag[ing] in any 'insubordination,'" failing to complete assigned tasks, and "ma[king] up excuses not to do tasks." But Lapham has also acknowledged that, on some occasions, her assigned tasks were not completed. She blames those instances on Shelton's directions to "do something else." In addition to being somewhat equivocal, this testimony does not directly address what matters: whether Shelton and Walgreens had a good-faith belief that Lapham sometimes improperly failed to complete assigned tasks. *See Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1149 (11th Cir. 2020) (en banc) ("What matters in this inquiry is what the employer in good faith believes the employee to have done, not whether the

1266 (11th Cir. 2010) (quoting *Chapman v. Al Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc)).

Instead, Lapham simply chalks her termination up to retaliation while pointing to several pieces of evidence that, taken together, fail to create a genuine issue of fact on the issue. For instance, Lapham points to the evidence that Shelton brought up Lapham's FMLA leave requests during the April 4 and 5, 2017, discussions with HR about her alleged performance issues. But the fact that Shelton mentioned Lapham's then-pending FMLA leave requests to HR does not raise any red flags given that, according to Miranda, it is standard practice at Walgreens for HR to ask managers about FMLA leave requests during these sorts of conversations. Lapham also points to evidence that, on multiple instances before April 4, 2017, Shelton denied Lapham's informal requests to change the schedule so that she could take specific days off. However, this evidence carries minimal weight considering that Lapham's official requests for FMLA leave had not yet been approved by HR at the time of these informal requests to Shelton.[21]

---

employee actually engaged in the particular conduct."). For these reasons, Lapham's testimony is not sufficient by itself to create a genuine issue of material fact on this issue. Nor is it accompanied by any other evidence that creates a genuine issue.

[21] According to Lapham, when Shelton denied the requests for specific days off, she said "[n]o, the schedule is already up," "make other accommodations," and "[y]ou need to be able to do your job and you are not doing your job." Lapham characterizes these statements as "hostile and discriminatory comments," but, in truth, they do not rise to the level required to support a claim of retaliation. *Cf. Jones*, 854 F.3d at 1270–71, 1275–76 (finding a genuine issue

Lapham's only other notable evidence of retaliation pertains to the timing of her FMLA leave requests. Lapham contends that the fact that Shelton took eleven days to sign and submit her original 2017 leave request form and then seven days to sign and submit her updated 2017 leave request form is evidence of a retaliatory motive on the part of Shelton. Lapham also contends that the proximity in time between the final submission of her updated 2017 leave request (April 7, 2017) and her termination (April 13, 2017) is further evidence of a retaliatory connection. The issue with Lapham's first argument is that Shelton's delays were not so unreasonable as to indicate a retaliatory motive. And the issue with Lapham's second argument is that, generally speaking, a close temporal proximity between requesting leave and being terminated is not sufficient to establish pretext in the absence of other, meaningful evidence. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (noting that a close temporal proximity of "no more than two weeks, under the broadest reading of the facts," would "probably" be "insufficient to establish pretext by itself"). Ultimately, considering the circumstances, these timing arguments do not expose any genuine issues of material fact.

In sum, Lapham has failed to adequately show that Walgreens' proffered reasons for her termination (i.e.,

---

of material fact as to retaliation where the supervisor made comments that "corporate would not like the timing of [the employee's] FMLA leave" and that the employee was being suspended because corporate believed that he had abused and misused his FMLA leave).

insubordination and dishonesty) were merely pretext for retalia-tion and that, but for her attempts to exercise her FMLA rights, she would not have been fired.[22]  Accordingly, the district court did not err in granting summary judgment to Walgreens on Lapham's FMLA and FWA retaliation claims.

## B.      The Interference Claim

We turn next to Lapham's FMLA interference claim.  To succeed on such a claim, a plaintiff must prove that she was "denied a benefit to which [she] was entitled under the FMLA,"[23] *McAlpin*, 61 F.4th at 927 (quoting *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1241 (11th Cir. 2010)), and that, as a result, she was prejudiced in some way that is "remediable by either 'damages' or 'equitable relief,'" *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1241 (11th Cir. 2021) (quoting *Evans v. Books-A-Million*, 762 F.3d 1288, 1296 (11th Cir. 2014)).

---

[22] Lapham separately contends that the district court failed to afford proper weight to evidence postdating the April 5, 2017, phone call, which (according to Lapham, at least) also goes to causation.  To be clear, we have considered this argument and the evidence Lapham cites in support, and none of it moves the needle.

[23] An employee does not have to expressly assert his right to take FMLA leave in order to be entitled to it but must at least provide notice that is "sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and [of] the anticipated timing and duration of the leave." *Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005) (quoting 29 C.F.R. § 825.302(c)).

Unlike retaliation claims, a plaintiff bringing an interference claim is not required to make any showing regarding the employer's motives. *See McAlpin*, 61 F.4th at 927 ("The ordinary rule is that the employer's 'motives are irrelevant to an interference claim' . . . ." (quoting *Batson v. Salvation Army*, 897 F.3d 1320, 1331 (11th Cir. 2018))). In cases where the alleged interference was the decision to terminate an employee, however, the *employer* "may defend against a[n] FMLA interference claim by establishing that the employee would have been terminated anyway."[24] *Id.*; *see also Spakes v. Broward Cnty. Sheriff's Off.*, 631 F.3d 1307, 1310 (11th Cir. 2011) ("If an employer demonstrates that it would have discharged an employee 'for a reason wholly unrelated to the FMLA leave, the employer is not liable' under the FMLA for damages for failure to reinstate." (quoting *Strickland*, 239 F.3d at 1208)).

Here, Lapham alleges that, had Walgreens promptly approved the original leave request that she submitted in February 2017 rather than seek clarification and cause further delay, it "may have avoided both Shelton's refusal to provide [Lapham] days off to care for [her son] and . . . her later firing in April of 2017 due to Shelton's continued and growing FMLA animus." Lapham thus

---

[24] Critically, the burden of establishing this affirmative defense is greater than the burden at the second step of the *McDonnel Douglas* framework for retaliation claims, where the employer must merely *articulate* a legitimate, nondiscriminatory reason. *See* 411 U.S. at 802. Here, to defeat an interference claim based on a termination, the employer must point to evidence persuading the court of the independent reason for the termination. *See Spakes*, 631 F.3d at 1310; *McAlpin*, 61 F.4th at 933–34.

alleges that she experienced two harms as a result of Walgreens' interference: (1) the denial of certain days off and (2) termination of her employment.

Insofar as Lapham's interference claim is based on the denial of certain days off, Lapham has failed to produce evidence showing that she suffered any remediable prejudice. Lapham has not, for example, shown that she incurred expenses when obtaining transportation for her son to and from medical appointments on the days for which she had requested but was denied time off. Nor has she shown that she incurred expenses by rescheduling those appointments. Because Lapham has not offered any explanation of how the denial of certain days off produced a harm that is remediable by either damages or equitable relief, her interference claim fails to the extent that it is based on those denials.

Meanwhile, insofar as Lapham's interference claim is based on her termination, Walgreens has successfully met its burden of showing that Lapham truly was terminated for the stated reason of insubordination. Walgreens has done so by producing, among other things: Shelton's testimony about Lapham's work conduct; Shelton's log of specific instances wherein Lapham exhibited insubordination or otherwise failed to meet expectations; the call logs for Shelton's discussions with HR on April 4 and 5, 2017; Miranda's testimony about those discussions; and multiple performance reviews prepared by different managers establishing that, on multiple occasions, Lapham failed to complete her assigned tasks. And rather than meaningfully rebut this evidence, Lapham has conceded

that she sometimes did not complete her assigned tasks but simply blamed those failures on her supervisors' instructions. On this record, Walgreens has met its burden in establishing its defense that Lapham was terminated for a reason wholly unrelated to the FMLA.

We therefore conclude that the district court did not err in granting summary judgment to Walgreens on Lapham's FMLA interference claim.

## IV.

For these reasons, we affirm the district court's grant of summary judgment in favor of Walgreens.

**AFFIRMED.**

1                          WILSON, J., Dissenting                    21-10491

WILSON, Circuit Judge, dissenting:

I agree with the majority that the proper causation standard for both Family Medical Leave Act (FMLA) and Florida Whistle-blower Act (FWA) retaliation claims is but-for causation. But I would hold that there are genuine issues of material fact that preclude summary judgment on all of Doris Lapham's claims—both her FMLA and FWA retaliation claims and her FMLA interference claim. Thus, I would reverse the district court. I respectfully dissent.